905 P.2d 1384

STATE of Arizona, Appellee,

v.

Arvine Mervin HARDWICK, Appellant.

No. 1 CA–CR 94–0303.

Court of Appeals of Arizona,
Division 1,
Department E.

Nov. 7, 1995.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Galen H. Wilkes, Assistant Attorney General, Phoenix, for Appellee.

Sandra B. Freedman, Scottsdale, Kathleen Mead, Glendale, for Appellant.

## OPINION

GRANT, Judge.

Arvine Mervin Hardwick ("Defendant") appeals his convictions and sentences on sixteen counts of child molestation, attempted child molestation, sexual conduct with a minor, public indecency, and sexual abuse, all felonies and dangerous crimes against children under Title 13, Chapter 14 of the Arizona Revised Statutes Annotated ("A.R.S."). For the reasons that follow, we reverse the convictions and sentences imposed by the trial court and remand this case for a new trial.

### FACTUAL [1] AND PROCEDURAL BACKGROUND

At various times between 1987 and 1990, Defendant resided with his friend Daren, Daren's wife Linda, and Linda's three daugh-

---

1. The facts are viewed in a light most favorable to sustaining the judgment with all reasonable inferences resolved against the defendant. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

ters, KA, CA and BA.[2] The three girls were under fifteen years of age at that time. In 1993, KA told her stepmother that Defendant had molested her. The stepmother questioned CA and BA and concluded that Defendant had molested them, too. She contacted the Mesa Police Department. Police interviewed the victims and recorded a "confrontation call" from KA to Defendant in which Defendant made inculpatory statements.

A Maricopa County grand jury indicted Defendant on ten counts of child molestation and attempted child molestation under A.R.S. section 13–1410, three counts of sexual conduct with a minor under A.R.S. section 13–1405, four counts of indecency under A.R.S. section 13–1403, and one count of sexual abuse under A.R.S. section 13–1404. The case proceeded to a jury trial. KA, CA and BA testified to the details of the sex crimes, and the state played the tape recording of KA's confrontation call. Defendant attacked the credibility of the state's witnesses and introduced evidence of his good character. Defendant also testified on his own behalf, refuting the victims' allegations and explaining that his seemingly inculpatory statements during the confrontation call were actually innocent statements that had been misconstrued.

The trial court directed a verdict of acquittal on one count of attempted child molestation. The jury convicted Defendant on sixteen of the seventeen remaining counts. The trial court imposed sixteen consecutive prison sentences, two of which were aggravated, totalling 224 "flat" years of imprisonment. The court also ordered Defendant to pay restitution in the amount of $36,659. Defendant filed a timely notice of appeal. This court has jurisdiction to adjudicate the appeal. Ariz. Const. art. VI, § 9; A.R.S. §§ 12–120.21, 13–4031, 13–4033.

### ISSUES PRESENTED

1. Whether there was sufficient evidence to support the convictions on counts 16 and 17;

2. Whether the trial court relied on appropriate factors in aggravating Defendant's sentence on Count 2;

3. Whether the trial court relied on appropriate factors in aggravating Defendant's sentence on Count 6; and

4. Whether the state's repeated references to an otherwise inadmissible document entitled "Child Molesters: A Behavioral Analysis" during cross-examination of Defendant constituted fundamental error, and, if so, whether that error was harmless.

### DISCUSSION

We will discuss the last issue first as it is dispositive of the case.

*The state's use of inadmissible hearsay evidence in the form of a document entitled "Child Molesters: A Behavioral Analysis" constituted fundamental error.*

During the cross-examinations of Defendant and Defendant's character witnesses, the prosecutor established the following:

- Defendant was over 25 when he married.
- Defendant did not frequently date before his marriage.
- Defendant had a keen interest in children and his friends included children.
- Several of Defendant's child friends were neglected by their own families.
- Defendant was the "nice guy" in the neighborhood to whom children could turn and discuss their problems.
- Defendant had a business where he employed young children.
- Defendant took children out to a coffee shop and treated them to sodas.
- Defendant does not engage in sex with his wife or other adults.

At the conclusion of this line of questioning, the prosecutor asked Defendant, "Based on those traits, isn't it also true you are a classic child molester?" Defendant stated he had no idea, and the prosecutor handed him a docu-

---

2. We have abbreviated the names of the victims in the interest of protecting their privacy. *See*

A.R.S. § 13–4434.

ment entitled, "Child Molesters: A Behavioral Analysis" marked state's Exhibit 8. The following cross-examination transpired:

Q: (Prosecutor): Mr. Hardwick, I have handed you *a document that indicates Child Molester's Behavioral Analysis,* is that correct?

A: Yes.

Q: And if you turn the page, it indicates you are on Chapter 4 of that document, is that correct?

A: I don't see a page number or anything.

Q: It indicates at the top, it is No. 4, correct, Page 11 of that document *identifying pedophile.*

A: (Nodding affirmatively.)

Q: If I could draw your attention to the next page, Page 12 of that document.

Defense Counsel: Objection, Your Honor. She is asking to comment on hearsay an [sic][3] improper expert opinion.

The Court: She is directing his attention at this point and [sic] time.

\* \* \* \* \* \*

Q: (Prosecutor): . . . I am asking you if there is a highlighted portion under the section marked Multiple Victim?

A: Yes.

Q: That section indicates individuals molested, it is a very strong indicator the offender is a pedophile.

A: That is what it says.

Q: Second predictor, someone over twenty-five, single, never married.

A: Yes.

Q: . . . [I]t indicates the person has a very limited dating relationship, is not married.

A: (Nodding affirmatively.)

Q: And it also indicates further down someone who has an interest in children that seems too good to be true, correct?

A: That is not in my case.

Q: I am not asking you that. I am asking you whether or not that document indicates that.

A: Is that what it says; is that what you are asking me?

Q: Right.

A: Yes.

Q: It indicates very frequently associates [sic] and a circle of young friends who are young, true?

A: Yes.

Q: And it states that their friends may be male, female or both sexes, correct?

A: Yes.

\* \* \* \* \* \*

Q: . . . [The document] indicates more often than not the victim selected select children who turn out to be victims from broken homes or physical or emotional neglect. Is that true?

A: That is what it says. Is that what you want me to affirm?

Q: *This is a documentation indicating pedophilia traits. It says, identifying pedophiles.*

A: Yes. I don't know what it is. I am telling you, yes, it is in here what you are saying.

Q: It says pedophiles have an unusual ability to identify with children better than they do with adults, correct?

A: Yes.

Q: A little bit further down, it indicates pedophiles frequently is [sic] the nice guy in the neighborhood, true?

A: Yes.

Q: And pedophiles may open a business that hires adolescents, isn't that true?

A: Yes.

Q: They talk about literally seducing a child to be friends with them, befriend them, isn't that true?

A: That is what it says.

Q: And it says you befriend them by talking to them, correct?

A: Yes.

Q: And listening to them?

A: Yes.

Q: Paying attention to them?

---

3. We note many apparent inaccuracies throughout the transcripts of this case. We assume this should be read as "and" rather than "an" as reported because only the former makes sense.

A: Yes.

Q: Spending time with them?

A: Yes.

Q: And buying gifts for them?

A: Yes.

Q: And, based on that, it should not be difficult to understand how victims become attached to the offender, isn't that correct?

A: Yes.

Q: And, *based on identifying pedophiles,* · *you are a classic child molester,* isn't that true?

A: No.

The document itself, marked for identification as state's Exhibit 8, was *not* admitted into evidence.

■ Defendant argues that his trial counsel was ineffective for failing to object to the above-quoted line of questioning; Defendant asks us to reverse his conviction on that basis on direct appeal rather than obligating him to seek relief under Rule 32 of the Arizona Rules of Criminal Procedure. We do not review an ineffective assistance of counsel claim on direct appeal unless "we may clearly determine from the record that the ineffective assistance claim is meritless." *State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989). This is not such a case.

■ Defendant's counsel did properly object to this line of questioning as both hearsay and improper expert opinion. *See* 17A A.R.S. Rules of Evid., Rules 701, 801. The trial judge overruled defense counsel's objection, apparently believing that the prosecutor had not yet done anything in violation of those rules. We disagree. Trial counsel stated the grounds for the objection and therefore it was sufficiently preserved for review on appeal. *Goodman v. Carson,* 84 Ariz. 177, 325 P.2d 819 (1958). Because the trial court incorrectly allowed inadmissible evidence over defense counsel's proper objection, we review for harmless error. *State v. Bible,* 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994).

■ The prosecutor's questions to Defendant reiterated passages from a document (Exhibit 8) that purported to establish the traits of child molesters. Identifying common traits of child molesters is the province of experts. *State v. Hamilton,* 177 Ariz. 403, 868 P.2d 986 (App.1993) ("Dr. Boychuk's testimony regarding the general behavioral characteristics of child molesters and their victims is virtually the identical type of testimony that is consistently upheld by both this court and the supreme court as being helpful to jurors and, thus, a proper subject for expert testimony."). Information of this nature can only be admitted into evidence in the form of expert testimony or, alternatively, in the form of learned treatises if the proponent has shown that the treatise is reliable authority. Ariz.R.Evid. 803(18).

■ There is no reference to or discussion of Exhibit 8 prior to the cross-examination of Defendant. The state did not offer any expert testimony, nor did it offer any foundation to establish that Exhibit 8 is a reliable source of information on the subject. As the record stands, the author of the document is unknown, as is the question of whether the document reflects generally accepted scientific findings. Finally, it is unclear whether this document is recognized as reliable by experts in the field. In short, there was no foundation for the admission of Exhibit 8, and there was no permissible basis for introducing its contents—in the form of questions and answers—into evidence. The prosecutor's cross-examination of Defendant communicated to the jury the content of an otherwise inadmissible document. Furthermore, the prosecutor forced Defendant to testify in a manner that was particularly self-incriminating, a manner in which Defendant would not have otherwise testified were it not for the trial court's refusal to sustain defense counsel's timely objection.

At the time of the closing argument the prosecutor exacerbated the harm by arguing to the jury that Defendant had the characteristics of a pedophile based upon the contents of the unadmitted Exhibit 8. Of Defendant's character witnesses, the prosecutor stated, "They want to say the character traits are not that [sic] of a molester, but on the other hand, they admitted that *each and every trait did fit into that category.* What they observed and what they see are those traits."

The prosecutor went on to say, "[t]he whole litany of *what is a pedophile, each and every quality belongs to the defendant,*" and "you think about all those traits of Mr. Hardwick and *when you look like a pedophile, act like a pedophile, you are a pedophile.*" The state could not have made these arguments but for its calculated effort to establish the relevant characteristics on cross-examination, and its success in making the jury aware of the contents of unadmitted Exhibit 8.

The error here is clear. Evidence such as this is inadmissible unless it comes in the form of opinion testimony by a qualified expert or can qualify as a learned treatise under Rule 803(18) of the Arizona Rules of Evidence.

■ Furthermore, the error here is egregious. The prosecutor purposefully and repeatedly introduced the damaging contents of this unadmitted and inadmissible document, and then subsequently argued to the jury that Defendant was a child molester based upon the characteristics set forth in the document. No relief will cure this error short of a new trial. The state may have obtained the convictions on the strength of this inadmissible evidence. The error in this case is both reversible and fundamental. The "child molester profile" evidence had a direct bearing on the central issue: whether Defendant molested the victims. In order to accept the state's argument on this issue, the jury must have concluded that Defendant "looks like a pedophile, acts like a pedophile," and therefore "is a pedophile."

Based on the dimensions of the error in this case Defendant was deprived of a fair trial. The right of cross-examination is constitutionally based and fundamental to our system of justice. The state's use of inadmissible hearsay evidence effectively subjected Defendant to opinion testimony by unknown experts who could not be cross-examined.

We do not find the error to be harmless because we cannot "say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *Bible,* 175 Ariz. at 588, 858 P.2d at 1191. To the contrary, here there is a significant probability that the jury relied on the prosecutor's improper cross-examination in reaching its verdicts. Under these circumstances, Defendant is entitled to a new trial.

*There was no substantial evidence to warrant the convictions on Counts 16 and 17.*

■ The indictment alleges ten acts of sexual misconduct against KA. Counts 9 through 11 allege crimes that occurred during an incident in Defendant's bedroom when KA was twelve·years old. Count 10 alleges that Defendant put his penis in KA's mouth, and Count 11 alleges that Defendant masturbated in KA's presence.

Counts 15 through 18 refer to another incident that took place in Defendant's bedroom at some point between October 1, 1989, and December 17, 1989, when KA—11 years old at the time[4]—was in Defendant's bedroom jumping on his bed. Count 15 alleges that Defendant inserted his finger into KA's vagina; Count 16 alleges that Defendant masturbated in front of KA; Count 17 charges that Defendant put his penis into KA's mouth; and Count 18 charges that Defendant put his mouth on KA's genitals.

On direct examination, KA testified to three separate incidents that took place in Defendant's bedroom *after* KA's twelfth birthday. KA testified to one encounter when Defendant fondled her breasts, another encounter when Defendant pushed KA's mouth onto his penis and masturbated in her presence, and yet another encounter when Defendant kissed her genitals and penetrated her vagina with his finger. KA testified to only one instance in Defendant's bedroom during which Defendant put his penis in her mouth and masturbated in her presence.

In discussing the encounter when Defendant digitally penetrated and also kissed KA's genitals, the prosecutor asked KA whether Defendant also masturbated himself or put his penis in her mouth. KA stated that she could not remember. Although KA said that this encounter occurred shortly after her twelfth birthday, it is apparent from the prosecutor's follow-up questions that this

4. KA turned twelve on December 18, 1989.

is the incident upon which Counts 15 through 18 are based. On cross-examination, KA acknowledged that she could not remember anything about this particular encounter beyond what she had already recounted on direct examination.

On redirect examination, KA recalled telling police that Defendant masturbated in her presence when she was jumping on his bed; and she independently recalled such an event, although she did not specify whether it was the same incident to which she had testified earlier. KA went on to recall an occasion—perhaps the same incident and perhaps not—on which she was jumping on Defendant's bed and Defendant put his penis in her mouth. KA was not able to state whether this single incident or these multiple incidents occurred before or after her twelfth birthday.

The trial court denied Defendant's motion for a directed verdict of acquittal on Counts 16 and 17. Defendant assigns error to that ruling, arguing a lack of evidence.

■ This court will not reverse a trial court's determination on grounds of insufficient evidence unless there is a complete absence of probative facts or the judgment is contrary to substantial evidence in the record. *State v. West,* 173 Ariz. 602, 610, 845 P.2d 1097, 1105 (App.1992).

Defendant's argument turns on his interpretation of KA's testimony, which he construes to refer to only one incident of masturbation and one incident of fellatio that took place in Defendant's bedroom. Counts 10 and 17 allege two different acts of fellatio, and Counts 11 and 16 allege two different acts of masturbation. There is a total absence of proof on Counts 16 and 17. As KA was only able to testify to one incident each of masturbation and fellatio that occurred in Defendant's bedroom, and as her testimony did not support the conclusion that these events occurred before her twelfth birthday, our analysis must turn on whether the prosecutor elicited sufficient additional evidence on redirect examination to either support these

convictions or to distinguish the state's proof on Counts 10 and 11 from proof on Counts 16 and 17.

KA's testimony as to time frames during redirect examination is at best confusing. In the indictment and on direct examination, the state attempted to distinguish the two incidents in Defendant's bedroom by referring to the earlier incident (Counts 15–18) as occurring (1) when KA was jumping on the bed and (2) shortly *before* KA's twelfth birthday. However, KA specifically stated that the incidents to which she testified took place *after* her twelfth birthday when she was in Defendant's bedroom *jumping on the bed.* KA testified that she was frequently in Defendant's bedroom jumping on the bed,[5] and the state conceded that "[a]ll of the bedroom incidents were associated with jumping on the bed and occurred while [KA] was twelve." Notwithstanding the leading nature of the prosecutor's questions on redirect examination, KA never testified as to an act of fellatio or masturbation that occurred *before* her twelfth birthday; nor is there testimony that Defendant masturbated in her presence in his bedroom on more than one occasion, or made her take his penis into her mouth in his bedroom on more than one occasion.

The state attempts to refute Defendant's argument on this issue by establishing that the charges set forth in Counts 10 and 11 are not identical to the charges set forth in Counts 16 and 17, and by showing that there was more than one episode of misconduct. Neither proposition has any bearing on the sufficiency of the state's evidence as to Counts 16 and 17.

The state failed to produce evidence that reasonable persons could accept as sufficient to support the convictions on Counts 16 and 17. *State v. Mathers,* 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990). Thus the trial court was obligated to enter a judgment of acquittal as to those counts upon Defendant's motion for directed verdict, and it erred by refusing to do so. Ariz.R.Crim.P. 20(a). The convictions on those counts must be reversed.

---

**5.** Defendant testified that all three girls frequently came into his bedroom and used his bed as a trampoline.

Although we are remanding this case for re-trial on other grounds, double jeopardy will preclude the prosecution from trying Defendant on these counts again.

*The trial court improperly considered Defendant's lack of contrition in aggravating his sentence on Count 2.*

Since we are remanding this case on other grounds we need not reach this issue, and yet we do so both because this issue involves fundamental constitutional rights and because this issue will likely resurface in the future.

■ Count 2 of the indictment charged Defendant with committing sexual conduct with a minor (BA), a class 2 felony under A.R.S. section 13–1405 and a dangerous crime against children. The statutory range of sentencing for this offense is 15 to 25 years. The trial court imposed an aggravated term of 25 years. Defendant argues that the trial court unlawfully aggravated his sentence based upon his lack of contrition, and Defendant seeks resentencing on this ground. We agree.

■ This court will not disturb a trial court's decision to impose an aggravated sentence if there were "sufficient and appropriate aggravating factors to justify imposition of maximum sentences." *State v. Gillies,* 142 Ariz. 564, 573, 691 P.2d 655, 664 (1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). The trial court made the following record in pronouncing the sentence on Count 2:

> [B]ased upon the nature of the offense which is no contrition, harm to the victim, the aggravating circumstances are warranted in that case, I am sentencing Mr. Hardwick to the aggravated term of twenty-five years.

■ The judge's comments reveal two bases for aggravating the sentence: lack of contrition and harm to the victim. Defendant argues that the trial court equated lack of contrition with a refusal to admit guilt, and Defendant relies on cases that hold that sentences based on a refusal to admit guilt offend the constitutional privilege against self-incrimination. The state refers us to more recent cases in which reviewing courts upheld convictions where the trial court cited the "lack of remorse" as an aggravating factor. We do not decide here whether lack of remorse can be an aggravating factor following a guilty plea by a defendant. Remorse can be a *mitigating* factor with the defendant having the burden of proof by a preponderance of the evidence. *State v. Murray,* 184 Ariz. 9, 906 P.2d 542 (1995).

The dictionary defines contrite as "grieving and penitent for sin or shortcoming," and remorse as "a gnawing distress arising from a sense of guilt for past wrongs[.]" *Webster's Ninth New Collegiate Dictionary,* (1984). Thus, both terms connote an acknowledgement of guilt on the part of a defendant.

■ We agree that Defendant's lack of contrition is, for legal purposes, tantamount to a refusal to admit guilt. As contrition or remorse necessarily imply guilt, it would be irrational or disingenuous to expect or require one who maintains his innocence to express contrition or remorse. A convicted defendant's decision not to publicly admit guilt is irrelevant to a sentencing determination, and the trial court's use of this decision to aggravate a Defendant's sentence offends the Fifth Amendment privilege against self-incrimination. *State v. Carriger,* 143 Ariz. 142, 162, 692 P.2d 991, 1011 (1984), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985); *State v. Holder,* 155 Ariz. 80, 82–83, 745 P.2d 138, 140–41 (App. 1987), *vacated in part on other grounds,* 155 Ariz. 83, 745 P.2d 141 (1987); *but see, State v. Lask,* 135 Ariz. 612, 614, 663 P.2d 604, 606 (App.1983) ("[I]t has been held that there is no Fifth Amendment violation in a trial court considering at sentencing a defendant's failure to confess to crimes of which he has been convicted."). The trial court therefore erred when it considered Defendant's lack of contrition an aggravating factor.

■ When a trial court relies on both proper and improper factors in aggravating a sentence, this court will uphold its decision "only where the record clearly shows the

trial court would have reached the same result even without consideration of the improper factors." *State v. Ojeda*, 159 Ariz. 560, 562, 769 P.2d 1006, 1008 (1989). Here, the record does not reveal whether the trial court would have imposed the maximum, aggravated sentence based solely on its finding of harm to the victim. Accordingly, were we not reversing the case on other grounds, it would be necessary to remand this matter for resentencing on Count 2.

We note that the two cases cited by the state do not expressly hold that a defendant's "lack of remorse" is a proper aggravating factor, but simply note that the trial court used this factor, among many others, in aggravating a sentence. In *State v. Day*, 148 Ariz. 490, 498, 715 P.2d 743, 751 (1986), the supreme court considered whether a sentence was excessively long and whether it was too ambiguous to execute. In *State v. Robinson*, 153 Ariz. 188, 189, 735 P.2d 798, 799 (App.1986), *affirmed as modified*, 153 Ariz. 191, 735 P.2d 801 (1987), this court considered whether a trial court acted improperly when it sentenced a defendant to consecutive terms and imposed an excessive sentence. The state cites no other authority for the proposition that a trial court may consider a defendant's lack of remorse as a factor in aggravation.

Since we are remanding this case for retrial on other grounds we need not reach the remaining issue.

## CONCLUSION

For the foregoing reasons, we reverse Defendant's convictions and sentences and remand this case for a new trial.

WEISBERG and PATTERSON, JJ., concur.