922 P.2d 927

**The STATE of Arizona, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable William L. Topf, III, a judge thereof, Respondent Judge,**

**Jafet Adolfo CORONADO, Real Party in Interest.**

**No. 1 CA–SA 96–0202.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 22, 1996.

Richard M. Romley, Maricopa County Attorney by Arthur Hazelton, Deputy County Attorney, and Kevin M. Rapp, Deputy County Attorney, Phoenix, for Petitioner.

Antonio R. Zúñiga, Phoenix, for Respondent.

## OPINION

KLEINSCHMIDT, Judge.

This special action concerns the construction of a provision of the Arizona Constitution concerning victims' rights. We accepted jurisdiction and denied the State the relief it requested, indicating that this opinion would follow. We conclude that the trial court did not err in requiring the parents of a victim of sexual assault to submit to an interview by counsel for the person accused of the assault.

Jafet Coronado and a female co-worker, whom we will refer to as the deceased, were employed at a health care center. The deceased claimed that in May of 1995 Coronado sexually assaulted her. She reported the incident to her supervisor and subsequently took some time off from work due to stress and anxiety over the incident. When she returned to work, she claimed to have "encountered insensitive reactions from her employers and fellow staff members." She said she also felt ostracized because of the threat that her allegations might result in civil liability for the health care center. On one occasion shortly after the incident, she told a co-worker that she was going to leave her job

and that she was going to kill herself because of how she was treated at work and because of what another alleged victim of a sexual assault by Coronado had told her. The deceased also felt "disappointed" and "betrayed" when her employer denied her a position as a phlebotomist because she had disclosed to her supervisor in confidence that she, the deceased, was HIV positive.

In November or December of 1995, the deceased stole her supervisor's truck and kidnapped her supervisor's two infant sons. The record does not reflect how this incident was resolved. A month or so later, the deceased broke into her supervisor's home at gunpoint. Four children were present at the time. The police arrived and the deceased locked herself and one of the children in a bathroom. She ultimately released the child and committed suicide by shooting herself in the head.

Shortly before the deceased committed suicide, Coronado was indicted for two counts of sexual abuse and one count of sexual assault involving the deceased and one count of sexual abuse and one count of sexual assault involving a patient at the same health care center. After the State listed the deceased's parents as witnesses, Coronado's counsel filed a motion pursuant to Rule 15.3, Arizona Rules of Criminal Procedure, seeking to interview them. The State responded, arguing that the parents had the right to refuse the interviews pursuant to the Victims' Bill of Rights. *See* Ariz. Const. art. 2 § 2.1(C). The trial judge granted Coronado's motion, stating:

> It would be my preliminary view that I believe the [Victims' Bill of Rights] would not extend to the parents of the deceased in a case such as this where the victim's death is not directly related to the alleged crimes.

The judge ordered that counsel for the State be present at the interview and reminded the State that it could seek a protective order if issues arose during the interview that warranted such. The judge also reminded counsel for both sides that they were to act professionally and with sensitivity.

In 1990, the people of Arizona voted to amend the constitution by adopting the Vic-tims' Bill of Rights which, among other things, gives victims the right to "refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. 2, § 2.1(A)(5). "Victim" is defined in the constitution as "a person against whom the criminal offense has been committed or, if the person is killed or incapacitated, the person's spouse, parent, child or other lawful representative, except if the person is in custody for an offense or is the accused." Ariz. Const. art. 2, § 2.1(C).

In 1991, the Arizona legislature enacted the Victims' Rights Implementation Act pursuant to its authority under article 2, section 2.1(D). *See* Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 13–4401 to 13–4438. The statutory definition of "victim" is identical to the constitutional definition. *See* A.R.S. § 13–4401(18).

The State contends that the trial judge erred by employing the narrower definition of "victim" provided for by Rule 39(a)(1), Arizona Rules of Criminal Procedure:

> [A] person against whom a criminal offense as defined by 13–4401(6) has allegedly been committed, or the spouse, parent, lawful representative, or child of someone *killed or incapacitated by the alleged criminal offense,* except where the spouse, parent, lawful representative, or child is also the accused.

(Emphasis added.) The State claims that the rule is in conflict with the constitution because the constitution does not expressly require that the deceased be killed or incapacitated by the alleged criminal offense. The State argues that the constitutional definition should control.

■ We will not go outside the plain language of the constitution unless the intent of its language is unclear. *Fairfield v. Foster,* 25 Ariz. 146, 214 P. 319 (1923). Where the language is unclear, we look to the context, effect, consequences and spirit of the law. *State v. Sanchez,* 174 Ariz. 44, 846 P.2d 857 (App.1993).

■ While the constitutional definition of "victim" does not explicitly state that a de-

ceased victim must have been killed *by the alleged criminal offense,* we think that such a limitation is implied in the language of the constitution. The use of the word "killed" suggests that not just any cause of death will shield the victim's survivors from an interview by defense counsel. A victim who dies of natural causes, for example, cannot be said to have been "killed." Surely the constitution does not hinge the curtailment of an interview—a serious restriction on the search for truth[1]—on a death which was not caused by the defendant.

We hold that Rule 39(a)(1), Arizona Rules of Criminal Procedure, clarifies, and is consistent with, the constitutional and statutory definition of "victim." The parents of the deceased qualify as "victims" only if the deceased was killed by the alleged criminal offenses with which the defendant is charged.

The State contends that, even if Rule 39 is valid, "there is a nexus between the death of the victim and the alleged offense[s]." It argues that Coronado's conduct started a chain of events that ultimately resulted in the deceased's suicide. We believe that the standard for demonstrating that the alleged criminal offense killed the victim within the meaning of Rule 39 requires a showing of causation, which is something more than just any nexus. The death does not have to be the immediate result of the criminal act to be caused by it. A criminal act can cause the death indirectly through a chain of natural events and causes unchanged by human action. *State v. Edwards,* 136 Ariz. 177, 665 P.2d 59 (1983) (defendant caused victim's death where victim suffered fatal heart attack during robbery); *State v. Fierro,* 124 Ariz. 182, 603 P.2d 74 (1979) (defendant's acts of shooting the victim found to be cause of victim's death where victim was subsequently placed on life support sys-

tem for three days before system was turned off); *Drury v. Burr,* 107 Ariz. 124, 126, 483 P.2d 539, 541 (1971) (defendant's act of breaking victim's jaw caused victim's death even though victim ultimately died from choking on his vomit). On the other hand, an act cannot be said to be the cause of a death if the chain of natural effects and causes between them is broken by intervening events which are abnormal or unforeseeable. *State v. Hall,* 129 Ariz. 589, 633 P.2d 398 (1981).

In this case, the State failed to offer sufficient facts from which the trial judge could conclude that Coronado's actions caused the decedent's death within the meaning of Rule 39, and the Victims' Bill of Rights. The relationship between Coronado's alleged conduct and the deceased's suicide in this case is too speculative to permit such a finding. For one thing, the factors of personality, mental instability, and physical health that may have been the cause of the suicide are, on this record, unknown and unfathomable. For another, from what we can glean from the record, the deceased's anxieties and animosities were directed more at her superior and a failure to achieve promotion than at Coronado.

We affirm the trial court's order requiring the parents of the deceased to submit to interviews by counsel for Coronado. The stay of the trial court's order previously issued is vacated.

GRANT, P.J., and NOYES, J., concur.

---

**1.** The search for truth implicates the right to due process of law. Under certain circumstances, a defendant's right to gather exculpatory information can take precedence over the victim's consti-tutional right to be left alone. *See State ex rel. Romley v. Superior Court,* 172 Ariz. 232, 241, 836 P.2d 445, 454 (App.1992) (Lankford, J., concurring).