935 P.2d 928

**STATE of Arizona, Appellee,**

v.

**Alfredo Morales TINAJERO, Appellant.**

No. 1 CA–CR 96–0156.

Court of Appeals of Arizona,
Division 1, Department B.

Jan. 9, 1997.

Review Denied April 29, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Linda L. Knowles, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Anna M. Unterberger, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

GERBER, Presiding Judge.

Alfredo Morales Tinajero (Tinajero) appeals his convictions and sentences for six felony offenses arising from a single fatal traffic collision. We vacate two of his convictions for leaving the scene of an accident because he was improperly charged with three counts of that offense. His remaining convictions are affirmed. We further remand all remaining counts for resentencing because the trial court utilized an improper aggravating factor in sentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

We view the facts in the light most favorable to sustaining the jury verdicts. *State v. Atwood*, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). Tinajero was driving his pickup truck at a high rate of speed when he attempted to pass a vehicle, decided not to, and then lost control of the truck. The truck crashed into an oncoming car. David Lucas, the driver, died as a result of injuries suffered in the collision. His wife Tammy suffered fractures to her arm and hand. Their son Steffan suffered two black eyes and an injury where his seat belt had been buckled.

After the collision, Tinajero's truck rolled over on the driver's side. He and a companion climbed out of the window behind the driver's seat and fled to the home of Florenzio Sanchez Granados, the registered owner of the truck. Tinajero admitted to Sanchez that he had been driving when he crashed the truck. Maricopa County Sheriff's Deputy Pablo Gonzalez later interviewed Sanchez. As he did so, Tinajero then told the deputy that he had been driving the truck at the time of the crash. He claimed that he had not hit anything and that he was alone in the truck. He said he had left the scene of the collision because he was nervous and scared. He reiterated these statements to Scottsdale Police detective William Yedowitz, with Gonzalez providing a translation from Spanish to English. After Tinajero received treatment for his injuries at a local hospital, Yedowitz interviewed him again, with Officer Christopher Humiston providing translation. In this interview, Tinajero admitted knowing that his truck collided with another car.

Police obtained a sample of Tinajero's blood. At the time of the test, his blood alcohol content was .14 percent. A criminalist estimated that Tinajero's blood alcohol content was between .192 and .226 percent at the time of the accident. Investigators tested blood found inside Tinajero's truck and learned that it could not have come from him. The investigation disclosed that Alfonzo Sanchez, Tinajero's companion, had been injured in the collision. Alfonzo testified that he, Tinajero, and a third man had shared 24 cans of beer in the hours preceding the accident. Alfonzo confirmed that Tinajero had been driving at the time of the collision. He said that, after the truck rolled over, Tinajero had said, "[l]et's go, because the police are going to come."

Tinajero testified at trial. He claimed that Alfonzo had been driving the truck when the crash occurred. He said that he had falsely told police that he had been driving in order to protect Alfonzo, who was an illegal immigrant, and because he did not think anyone had been hit. He denied telling Florenzio Sanchez that he had been driving.

Tinajero was found guilty of six felony offenses: manslaughter, a class 2 dangerous felony; two counts of aggravated assault, class 3 dangerous felonies; and three counts of leaving the scene of an accident involving

death or injury. One count of leaving the scene was a class 5 felony premised on the death of David Lucas. The other two counts of that offense were class 6 felonies. The trial judge imposed concurrent aggravated sentences of 15 years for manslaughter; 10 years for aggravated assault against Tammy Lucas; and 12 years for aggravated assault against Steffan Lucas. The judge also imposed concurrent terms on the three counts of leaving the scene, sentencing him to two years for the class 5 felony and 1.5 years for each class 6 felony. The judge ordered those latter three concurrent sentences to be served consecutively to the concurrent sentences for aggravated assault and manslaughter.

Tinajero timely appeals. We have jurisdiction pursuant to Arizona Revised Statutes Annotated (A.R.S.) sections 12–120.21(A)(1), 13–4031 and 13–4033(A).

## ISSUES ON APPEAL

Tinajero raises the following issues on appeal:

1. Whether the trial court erred in denying his motion to admit polygraph evidence;

2. Whether the court erred in precluding admission of his out-of-court statements in which he denied he was driving the truck at the time of the accident;

3. Whether the court erred in denying his motion for sanctions when the state made untimely disclosure of police reports;

4. Whether the court erred in determining that his post-arrest statements were voluntary;

5. Whether the court erred in overruling his hearsay objection to Yedowitz' testimony as to the interpreting officers' translations;

6. Whether the court erred in refusing a jury instruction derived from *State v. Willits,* regarding the state's alleged failure to preserve evidence;

7. Whether he was properly charged and convicted of three counts of leaving the scene of an accident involving injury or death;

8. Whether his convictions for manslaughter and aggravated assault precluded, on double jeopardy grounds, his conviction for leaving the scene of the accident;

9. Whether the trial court used improper aggravating factors at sentencing.

## DISCUSSION

### 1. ADMISSION OF POLYGRAPH EVIDENCE

■ Prior to trial, Tinajero moved to introduce evidence that he underwent a polygraph examination which revealed that he responded truthfully when he denied driving the vehicle involved in the collision. The trial court denied the motion. We find no error. Evidence regarding a polygraph examination is inadmissible absent a stipulation by the parties. *State v. Ikirt,* 160 Ariz. 113, 115, 770 P.2d 1159, 1161 (1989).

### 2. ADMISSION OF PRIOR CONSISTENT STATEMENTS

■ Tinajero asserts that the trial judge erred when he precluded testimony that, while incarcerated after his arrest, Tinajero stated that he had not been driving at the time of the collision. His out-of-court statements were hearsay, Ariz. R. Evid. 801(c), but were potentially admissible as nonhearsay under Rule 801(d)(1)(B) to rebut a charge of recent fabrication if they were made before a motive to falsify arose. *State v. Martin,* 135 Ariz. 556, 559, 663 P.2d 240, 243 (App.1982); *State v. Vild,* 155 Ariz. 374, 377, 746 P.2d 1304, 1307 (App.1987). The judge determined that Tinajero's motive to falsify had arisen by the time he was arrested. Given this time sequence, the trial court did not abuse its discretion.

■ Tinajero also argues that his post-arrest statements that he had not been driving should have been admitted under the "catchall" hearsay exception of Rule 803(24). We have previously rejected the admissibility of prior consistent statements under this rule because "the trustworthiness of an individual's assertions of innocence are [sic] highly suspect." *Starkins v. Bateman,* 150 Ariz. 537, 545, 724 P.2d 1206, 1214 (App.1986).

## 3. DENIAL OF MOTION FOR SANCTIONS

During trial, Tinajero moved for sanctions after the state made untimely disclosure of police reports containing statements of various witnesses. The trial judge granted the motion in part and denied it in part. On appeal, Tinajero argues that the judge committed reversible error in denying his motion for a continuance to permit him to depose Martin Tinajero to whom he made the post-arrest statements denying that he was driving at the time of the collision.

We find no reversible error. Even if Tinajero's own statements following his arrest qualified as exculpatory evidence under Rule 15.1(a)(7), Arizona Rules of Criminal Procedure, a new trial was not required unless the statements were material. *State v. Spears*, 184 Ariz. 277, 287, 908 P.2d 1062, 1072 (1996). Evidence is material only if there is a reasonable probability that its disclosure would have changed the outcome of the proceeding. *Id.* Because Tinajero's prior statements were inadmissible hearsay, they were not material. Accordingly, the trial court did not abuse its discretion in denying the requested continuance. *See State v. Krone*, 182 Ariz. 319, 322, 897 P.2d 621, 624 (1995)("[T]he propriety of a given sanction for a discovery violation is largely within the discretion of the trial judge.")

## 4. VOLUNTARINESS OF STATEMENTS

Tinajero contends that the trial court erred in determining that his statements to Yedowitz were voluntary. He claims that the statements were rendered involuntary by the investigator's failure to inform him of the fact that David Lucas had died.

This argument is meritless. We assess the voluntariness of a defendant's statement from the totality of the circumstances. *State v. Carrillo*, 156 Ariz. 125, 135, 750 P.2d 883, 893 (1988). We will not disturb the trial court's determination that the statement was voluntary absent a showing of clear and manifest error. *State v. Tapia*, 159 Ariz. 284, 288, 767 P.2d 5, 9 (1988). "[T]he Constitution does not require the police to give every person being questioned a complete exposition of the reason for questioning, the objectives sought, the evidence already in hand, and the strength of the case being built." *Carrillo*, 156 Ariz. at 136, 750 P.2d at 894; *accord, People v. Smith*, 108 Ill.App.2d 172, 246 N.E.2d 689 (1969), *cert. denied*, 397 U.S. 1001, 90 S.Ct. 1150, 25 L.Ed.2d 412 (1970)(statement was not rendered involuntary by failure of police to disclose fact that victim had died).

Tinajero also invokes A.R.S. section 13–3988(B) (1989). This statute requires a judge to consider "[w]hether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession." The trial judge explicitly considered section 13–3988(B) in finding the confession voluntary.

Although Tinajero was informed he was arrested for aggravated assault, the fact that he was not informed of the potential manslaughter charge did not render his statements involuntary. The single factor listed in section 13–3988(B)(2), like the other factors enumerated in the statute, is not conclusive on voluntariness. *State v. Walden*, 183 Ariz. 595, 610, 905 P.2d 974, 989, *cert. denied*, —— U.S. ——, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996). Tinajero's waiver of his rights "was not invalid simply because the officers did not inform him of every crime about which they would question him." *Id.*

## 5. ADMISSION OF TRANSLATED STATEMENTS

At trial the state introduced Tinajero's statements to Yedowitz as translated by Gonzalez and Humiston. He now contends that the admission of these statements over his hearsay objection constitutes reversible error. We disagree.

The English translations of Tinajero's statements by Gonzalez and Humiston, recounted at trial by Yedowitz, were hearsay because each was a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ariz. R. Evid. 801(c). Hearsay is generally inadmissible. Ariz. R. Evid. 802. However,

translations like those at issue in this case may be admitted under the "catch-all" hearsay exception, Ariz. R. Evid. 803(24). *See generally State v. Terrazas,* 162 Ariz. 357, 783 P.2d 803 (App.1989).

Tinajero asserts that *Terrazas* is inapplicable because the interpreters' translations, recounted by Yedowitz, lacked the "circumstantial guarantees of trustworthiness" required by Rule 803(24). However, he premises this claim on the assertion that his own statement was "untrustworthy" because he later claimed it was false. His argument is misfocused since the trustworthiness of the translators' statements, not Tinajero's, is at issue. Two factors are relevant to the analysis: (1) the reliability of the translation and (2) the reliability of the testifying officer's recollection of the translation at trial. *Terrazas,* 162 Ariz. at 361, 783 P.2d at 807. He challenges neither factor on appeal. The record supports the conclusion that the translations were reliable.

### 6. DENIAL OF WILLITS INSTRUCTION

█ Tinajero asserts that the trial court erred in denying his request for an instruction pursuant to *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964), permitting the jury to infer from the failure of police to preserve evidence that the evidence was against the state's interest. He argued that the instruction was supported by the police's release of the truck to a towing company shortly after the collision. Two months later the vehicle was sold to a salvage company and destroyed. He claimed that he was deprived of an opportunity to test bloodstains within the truck to demonstrate that he had occupied the passenger seat at the time of the collision.

The trial judge denied the instruction on the ground that police had no reason to preserve the vehicle in light of Tinajero's admissions that he was its sole occupant at the time of the collision. We agree that the trial court did not abuse its discretion.

█ The duty of police to preserve potentially exculpatory evidence arises when the evidence is "obviously material." *State v.*

*Perez,* 141 Ariz. 459, 463, 687 P.2d 1214, 1218 (1984). This requirement reflects the due process standard of "constitutional materiality" that governs the preservation of evidence. *See State v. Walters,* 155 Ariz. 548, 551, 748 P.2d 777, 780 (App.1987). To be constitutionally material, *"[e]vidence must both possess an exculpatory value that was apparent before the evidence was destroyed,* and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (quoting *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984))(emphasis added). Given Tinajero's inculpatory statements on the night of his arrest, he was unable to demonstrate why police had a reason to retain the truck.

### 7. MULTIPLE CHARGES OF LEAVING THE SCENE

Tinajero contends that he was improperly charged and convicted of three counts of leaving the scene of a single accident involving death or injury. He bases his argument on his construction of the relevant statute, A.R.S. section 28–661, which at the time of the offense stated in pertinent part:

**A.** The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 28–663.

**B.** The driver who is involved in an accident resulting in death or serious physical injury as defined in section 13–105 and who fails to stop or to comply with the requirements of section 28–663 is guilty of a class 5 felony. Any person who is involved in an accident resulting in an injury other than death or a serious physical injury and who fails to stop or to comply with the requirements of section 28–663 is guilty of a class 6 felony.

This court previously considered the propriety of consecutive sentences—and, implicitly, of separate charges—under this statute

in *State v. Hamblin*, 165 Ariz. 211, 797 P.2d 1229 (App.1990). We there held that the defendant who struck two pedestrians at the same time was involved in two distinct "accidents" which engendered separate duties to each victim and supported consecutive penalties. *Id.*, 165 Ariz. at 213, 797 P.2d at 1231. We expressly avoided determining "whether, if defendant had struck one vehicle causing death or injury to two people," separate charges would apply. *Id.* We also noted in *Hamblin* that

> [t]he gravamen of the statutory offense is failure to remain at the scene, a crime of omission. Thus, a driver who becomes involved in multiple accidents has a duty created by law to remain at the scene of the accidents and to render aid to those injured and to otherwise comply with the provisions of A.R.S. § 28–663. Defendant's duty was to remain at the scene. His single act of leaving caused him to omit the performance of that duty as it relates to each accident.

*Id.*, 165 Ariz. at 214, 797 P.2d at 1232 (emphasis added).

■ This prior description of the essence of the offense in *Hamblin* points to the proper result in this case involving only a single accident. Leaving, or failing to return to, "the scene of the accident" supports a conviction of only a single charge, classified according to the most serious injury, for each such accident scene regardless of the number of victims.

The language of A.R.S. section 28–661(B), which specifies that felony sanctions apply to "[t]he driver who is involved in an accident," who either fails to stop at the scene or who stops but fails to comply with A.R.S. section 28–663 supports this result. The specific reference in A.R.S. section 28–663 to a single driver who is involved in a single accident is specific legislative direction that a single accident supports conviction for only a single offense. *Accord Dake v. State*, 675 So.2d 1365, 1367 (Ala.Cr.App.1995) ("legislative intent to allow multiple prosecutions for a single act that injures more than one person is determined by the [statutory language]"); *People v. Sleboda*, 166 Ill.App.3d 42, 116 Ill. Dec. 620, 630, 519 N.E.2d 512, 522 (1988)

(under virtually identical statute, "an individual can only be convicted once for leaving the scene of one accident since the focus is on remaining at the scene of the accident").

The state argues that A.R.S. section 28–663 supports multiple convictions. Among other requirements, that statute mandates that a driver involved in an accident "render to any person injured in the accident reasonable assistance." Based upon that directive, the state argues that a driver involved in a single accident may be separately charged under A.R.S. section 28–661 for each failure to render aid to each accident victim. However, we need not reach that issue here because the charge in question is not failure to render aid but rather the "geographical" charge of leaving the physical scene of the accident irrespective of injury.

■ Tinajero does not argue that evidence was insufficient to support his conviction for Count IV, which alleged that he left the scene of an accident involving death or serious physical injury. Accordingly, we affirm his conviction on that count but vacate his redundant convictions on Counts V and VI for leaving the scene of an accident involving injury.

## 8. DOUBLE JEOPARDY VIOLATION

■ Tinajero claims that the court's imposition of sentences for leaving the scene of an accident consecutively to his concurrent sentences for aggravated assault and manslaughter violated federal and state constitutional guarantees against double jeopardy. *See* U.S. Const., amend. V; Ariz. Const., Art. 2, § 10. In determining the propriety of consecutive sentences under both constitutional provisions, we apply the test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *State v. Cook*, 185 Ariz. 358, 365, 916 P.2d 1074, 1081 (App.1995). Under *Blockburger*, "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182.

Under the *Blockburger* analysis, the consecutive sentences were properly imposed.

The offenses of manslaughter and aggravated assault require the state to prove, respectively, causation of death and causation of physical injury. *See* A.R.S. §§ 13–1103(A)(1), 13–1203(A)(1)(1989). The offense of leaving the scene of an accident involving injury or death does not require proving who caused the harm involved in the accident but only the act of leaving the scene. Conversely, A.R.S. section 28–661 requires proof that Tinajero failed to stop, remain at the scene of the accident, or fulfill the requirements of A.R.S. section 28–663. These factors are not elements of proof for manslaughter or aggravated assault.

### 9. IMPROPER AGGRAVATING FACTORS

At sentencing, the trial judge identified as an aggravating factor "the fact that [Tinajero] fled the scene without regard to the victims' welfare." He argues that, because this finding merely restated an element of the offense of leaving the scene of an accident, it was improperly employed to aggravate his sentence for that offense.

 In *State v. Germain*, 150 Ariz. 287, 290, 723 P.2d 105, 108 (App.1986), we held that "[w]here the degree of a defendant's misconduct rises to a level beyond that which is merely necessary to establish an element of the underlying crime, the trial court may consider such conduct as an aggravating factor under the broad language" of A.R.S. section 13–702(C)(14). We agree with the state's argument that the trial court described aggravating factors beyond those merely necessary to establish an element of leaving the scene of the accident. Tinajero's evasion of police created an investigatory circumstance above the minimum elements required for criminal liability—e.g., remaining at the scene and failing to display a driver's license—that warranted consideration as an aggravating factor. The judge could also properly determine that, by exhibiting disregard to the plight of the victims, Tinajero demonstrated gross indifference that merited an aggravated sentence.

 Tinajero also challenges the trial court's finding that "the injuries that Steffan received" constituted an aggravating circumstance for the aggravated assault against Steffan Lucas. This finding is ambiguous. Under A.R.S. sections 13–1203(A)(1) and 13–1204(A)(2), his liability for aggravated assault attached when he caused any physical injury to Steffan. It is unclear whether the trial court relied on the fact that the child suffered multiple injuries—two black eyes, bruises, and seat belt injuries—or whether the severity of these injuries was used to warrant increased punishment. This matter can be clarified in resentencing on remand.

 The parties agree that the trial judge improperly considered Tinajero's lack of remorse as a factor aggravating each of his sentences. When a convicted person maintains his innocence through sentencing, as Tinajero did here, his failure to acknowledge guilt "is irrelevant to a sentencing determination" and "offends the Fifth Amendment privilege against self-incrimination." *State v. Hardwick*, 183 Ariz. 649, 656, 905 P.2d 1384, 1391 (App.1995). We agree with him that the sentencing record does not " 'clearly show that the trial court would have reached the same result even without consideration of the improper factor.' " *Id.* (quoting *State v. Ojeda*, 159 Ariz. 560, 562, 769 P.2d 1006, 1008 (1989)). Accordingly, we remand to the trial court for resentencing on the convictions unaffected by this opinion, with instructions to specify any aggravating factors and to ignore any lack of remorse.

### CONCLUSION

We have not reviewed the entire record for fundamental error pursuant to *State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996). Tinajero's convictions on Counts V and VI are vacated. The remaining convictions which are affirmed are remanded to the trial court for resentencing consistent with this opinion.

LANKFORD and GRANT, JJ., concur.