250 P.3d 196

**STATE of Arizona ex rel. Jon SMITH, Yuma County Attorney, Petitioner,**

v.

**The Honorable Mark W. REEVES, Judge of the Superior Court of the State of Arizona, in and for the County of Yuma, Respondent Judge,**

**Anthony Oswaldo Aguirre, Real Party in Interest.**

No. 1 CA–SA 11–0007.

Court of Appeals of Arizona,
Division 1, Department A.

March 1, 2011.

Jon R. Smith, Yuma County Attorney By Mark Edward Hessinger, Deputy County Attorney, Yuma, Attorneys for Petitioner.

Donovan Law, P.L.L.C. By Michael J. Donovan, Yuma, Attorneys for Real Party in Interest.

HALL, Judge.

¶ 1 The State seeks relief from the trial court's ruling that a child killed in a car accident and his surviving parents are not "victims" as defined by the Victims' Bill of Rights, Article 2, Section 2.1, of the Arizona Constitution, and the Victims' Rights Implementation Act, Arizona Revised Statutes (A.R.S.) sections 13–4401 to –4440 (2010,

Supp. 2010), because the offense with which the real party in interest (defendant) is charged, leaving the scene of a fatal accident, is not a crime against a person. For the following reasons, we accept jurisdiction and grant relief.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The underlying facts, as presented to the grand jury, are undisputed. In the early morning of April 27, 2008, Officer Juan Saenz of the San Luis Police Department "was called out to the hospital" to respond to a report of a child struck by a vehicle. When the officer arrived, hospital staff informed him that the child, C.C., was unconscious and about to be air-lifted to another hospital.

¶ 3 Officer Saenz then met with the officer who responded to the scene of the accident who informed him that C.C. ran into the street to retrieve a ball and was struck by a truck that "had made a semi-stop on one of the stop signs." Family members who saw the accident reported that, after the truck struck C.C., its brake lights were triggered "for a split second, and then the truck sped away." Some of the observers ran after the truck and attempted to flag down the driver, but to no avail.

¶ 4 Family members then called for emergency assistance. Approximately thirty minutes after C.C. had been struck, while emergency personnel were loading him onto an ambulance, defendant and another man approached the emergency responders and informed them that defendant was the driver of the truck and he had returned to the scene to find out what had happened. Defendant explained that he believed he had simply gone over a pothole.

¶ 5 Defendant returned to the scene in his friend's vehicle, not the truck he had been driving. When police officers later located defendant's truck, there was damage to the front bumper that corresponded to the height of C.C.'s head. Defendant was placed under arrest and tested for drug and alcohol impairment, which tests came back negative.

¶ 6 C.C. died from the injuries he sustained from being struck by defendant's vehi-

cle. The matter was submitted to a grand jury, which indicted defendant for one count of leaving the scene of a fatal injury accident in violation of A.R.S. § 28–661(A), (B) (Supp. 2010).

¶ 7 Shortly before trial commenced, defense counsel filed a motion in limine requesting that the court preclude the State from referring to C.C. as a "victim." On the first day of trial, the court held a hearing on defendant's motion. At the outset, the prosecutor stated that he did not intend to refer to C.C. as the "victim" and did not oppose the motion in limine on that basis. He then stated, however, that he was concerned about protecting C.C.'s parents' rights under the Victims' Bill of Rights. Defense counsel stated that he did not object to the trial court providing the parents notice or allowing them to remain in the courtroom for all proceedings, but he did request the opportunity to interview them.

¶ 8 After hearing argument on this issue while jury selection was underway, the court ultimately found that there was not a sufficient "nexus" between defendant's charged conduct and C.C.'s death, and therefore his parents were not entitled to assert the constitutional and statutory rights accorded crime victims. The trial court then entered a stay and declared a mistrial, and the State filed this special action.

¶ 9 We may accept special action jurisdiction when a case presents a pure question of law for which there is no "equally plain, speedy, and adequate remedy by appeal[.]" See Ariz. R.P. Spec. Act. 1(a). We accept jurisdiction of this special action because the rights at issue, that is, the rights of C.C.'s parents under the Victims' Bill of Rights and its implementing legislation, "would not be capable of protection if the matter were reviewed post-trial." *Morehart v. Barton*, 225 Ariz. 269, 271, ¶ 5, 236 P.3d 1216, 1218 (App.2010); *see also State ex rel. Romley v. Superior Court*, 184 Ariz. 409, 410, 909 P.2d 476, 477 (App.1995) (accepting special action review to reverse trial court's denial of "victim" status to the owner of a car damaged by a DUI defendant).

## DISCUSSION

¶ 10 The trial court based its ruling that C.C.'s parents could be compelled to submit to an interview by defendant on two separate grounds. First, that a person killed in a car accident is not a "victim" pursuant to the Victims' Bill of Rights when the driver of the vehicle involved in the accident is charged solely with leaving the scene of a fatal accident in violation of A.R.S. § 28–661(A), (B). Second, even if the person killed in the accident is a "victim," the victim's parents are not afforded victims' rights because the charged conduct did not cause the victim's death. We examine each of these rationales in turn.

¶ 11 As set forth in the Victims' Bill of Rights, Article 2, Section 2.1, of the Arizona Constitution, and the Victims' Rights Implementation Act, A.R.S. §§ 13–4401 to –4440, Arizona law provides crime victims certain rights and protections. Among these enumerated rights is the right "[t]o refuse an interview, deposition, or other discovery request by the defendant[.]" Ariz. Const. art. 2, § 2.1(5); *see also* A.R.S. § 13–4433(A). When the victim is a minor, the child's parent or legal guardian may exercise "victims' rights on behalf of the minor child." A.R.S. § 13–4433(H).

¶ 12 As defined in both the constitution and in its implementing legislation, a "victim" entitled to these special rights and protections is "a person against whom the criminal offense has been committed or, if the person is killed or incapacitated, the person's spouse, parent, child or other lawful representative[.]" Ariz. Const. art. 2, § 2.1(C); A.R.S. § 13–4401(19). As relevant in this case, "criminal offense" is defined as "conduct that gives a peace officer or prosecutor probable cause to believe" that a felony "has occurred." A.R.S. § 13–4401(6)(a).

¶ 13 The question first before us is whether C.C. qualifies as a victim under the Victims' Bill of Rights, that is, whether defendant committed a criminal offense against C.C. when he failed to stop his vehicle and render aid. When interpreting the scope of the Victims' Bill of Rights, we are required to follow and apply its plain language. *Romley*, 184 Ariz. at 411, 909 P.2d at 478.

Moreover, the Victims' Bill of Rights and its implementing legislation are "liberally construed to preserve and protect the rights to which victims are entitled." A.R.S. § 13–4418. Thus, courts "do not have authority to make ad hoc exceptions to the Victims' Bill of Rights." *Romley*, 184 Ariz. at 411, 909 P.2d at 478.

¶ 14 In this case, defendant was charged with one count of leaving the scene of a fatal accident in violation of A.R.S. § 28–661(A), (B), a class three felony. As set forth in that statute:

A. The driver of a vehicle involved in an accident resulting in injury to or death of a person shall:

1. Immediately stop the vehicle at the scene of the accident or as close to the accident scene as possible but shall immediately return to the accident scene.

2. Remain at the scene of the accident until the driver has fulfilled the requirements of § 28–663.

B. A driver who is involved in an accident resulting in death or serious physical injury ... who fails to stop or to comply with the requirements of § 28–663 is guilty of a class 3 felony, except that if a driver caused the accident the driver is guilty of a class 2 felony.

In pertinent part, A.R.S. § 28–663(A)(3) (2004) provides that the driver of a vehicle involved in an accident resulting in injury or death shall "[r]ender reasonable assistance to a person injured in the accident[.]"

¶ 15 Citing *State v. Powers (Powers II)*, 200 Ariz. 363, 26 P.3d 1134 (2001), defendant argued, and the trial court agreed, that C.C. was not a victim. In *State v. Powers (Powers I)*, 200 Ariz. 123, 127, ¶ 16, 23 P.3d 668, 672 (App.2001), the court of appeals had held that because there was only one accident scene, Powers could not be charged with more than one offense of leaving the scene of an accident regardless of how many persons were injured. It therefore vacated one of Powers' two convictions. *Id.* at 129, ¶ 23, 23 P.3d at 674. The supreme court granted review, characterizing the issue as: "We are

asked to decide whether the number of accident scenes under A.R.S. § 28–661 is defined by the number of victims affected by the accident." *Powers II*, 200 Ariz. at 363, ¶ 1, 26 P.3d at 1134. Agreeing with the court of appeals, the supreme court commented: "The plain language of A.R.S. § 28–661 makes it a crime to leave the scene of an accident. Nothing in the statute's language refers to accident victims the focus is on the scene of an accident." *Id.* at 364, ¶ 8, 26 P.3d at 1135.

■ ¶ 16 The trial court's reliance on *Powers II,* which involved multiplicitous charges, for the proposition that a person injured by a hit-and-run driver is not entitled to exercise the constitutional and statutory rights granted to crime victims is misplaced. It is true, as the court of appeals pointed out in *Powers I,* that a violation of A.R.S. § 28–661 is a "geographical" offense, 200 Ariz. at 125, ¶ 6, 23 P.3d 668 at 670 (quoting *State v. Tinajero,* 188 Ariz. 350, 356, 935 P.2d 928, 934 (App. 1997), *disapproved of on other grounds by Powers II,* 200 Ariz. at 364, ¶ 10, 26 P.3d at 1135), that can give rise to only one charge of leaving the scene. That does not mean, however, that the "run" part of a hit-and-run offense is a victimless crime or that a driver who flees the scene of an injury accident without "[r]ender[ing] reasonable assistance to a person injured in the accident" as required by A.R.S. § 28–663(A)(3) has not committed a crime against the injured person. The manifest purpose of that subsection is to "prohibit drivers of motor cars from … leaving persons injured in collisions, in distress or danger, for want of proper medical or surgical treatment." *State v. Milligan,* 87 Ariz. 165, 169, 349 P.2d 180, 183 (1960).

¶ 17 As such, even though there is no allegation that defendant was criminally liable for causing the accident, A.R.S. § 28–661(A)(2), which incorporates A.R.S. § 28–663 by reference, imposed an affirmative obligation on defendant to stop and render any necessary aid to the person he struck. Although defendant was not charged with committing a crime for hitting C.C., the charge that he left the scene without complying with A.R.S. § 28–663 is not simply a claim that defendant violated a safety statute or an offense against public order; rather, it is a claim that he violated the specific duty he owed to C.C. that arose the moment that defendant struck him. *Milligan,* 87 Ariz. at 170, 349 P.2d at 183 ("The statutory obligation to render reasonable assistance is imposed upon defendant alone; this obligation cannot be discharged by delegation to another party."); *cf. Douglass v. State,* 219 Ariz. 152, 153, 155, ¶¶ 5, 12, 195 P.3d 189, 190, 192 (App.2008) (affirming trial court's ruling that an order of protection petitioner, as the "intended beneficiary" of the order, qualified as a "victim" entitled to refuse a pretrial interview when the order of protection defendant was charged with interfering with judicial proceedings by violating the order).

■ ¶ 18 Moreover, even assuming that a violation of the other provisions of A.R.S. § 28–663 that require the exchange of identifying information might not implicate victims' rights provisions, the gravamen of the offense with which defendant is charged is the failure to stop and render aid in an accident involving death or serious physical injury, a class three felony. A.R.S. § 28–661(B). Accordingly, we conclude that the trial court erred as a matter of law when it found that C.C. was not a person against whom a criminal offense was committed when defendant struck him and then left the scene without rendering aid. Therefore, C.C. was a victim as defined by Article 2, Section 2.1(C), of the Arizona Constitution and A.R.S. § 13–4401(19).

¶ 19 The remaining question before us, then, is whether C.C.'s parents may avail themselves of the rights and protections afforded crime victims, and refuse to be interviewed. Citing *State v. Superior Court (Coronado),* 186 Ariz. 363, 922 P.2d 927 (App. 1996), defendant argues, and the trial court found, that C.C.'s parents are not entitled to invoke crime victim status because defendant's charged conduct did not *cause* C.C.'s death. We disagree.

¶ 20 In *Coronado,* the adult victim accused her co-worker, Coronado, of sexual assault. *Id.* at 364, 922 P.2d at 928. Shortly after Coronado was indicted for two counts of sexual assault, the victim committed suicide. *Id.* at 365, 922 P.2d at 929. After the State

listed the decedent's parents as witnesses, defense counsel requested to interview the parents. *Id.* In response, the State argued that the parents had the right to decline the interviews pursuant to the Victims' Bill of Rights. *Id.* The trial court ordered the decedent's parents to submit to interviews with defense counsel, and we affirmed, stating: "While the constitutional definition of 'victim' does not explicitly state that a deceased victim must have been killed *by the alleged criminal offense* [in order for a parent to qualify as a victim pursuant to the Victims' Bill of Rights], we think that such a limitation is implied in the language of the constitution." *Id.* at 365–66, 922 P.2d at 929–30 (emphasis in original). Applying *Coronado* to this case, the trial court found that defendant's charged conduct of failing to stop and render aid did not cause C.C.'s death, and therefore C.C.'s parents are not entitled to the rights and protections of the Victims' Bill of Rights.

¶ 21 The analysis in *Coronado* is inapposite here. Unlike the parents of an adult victim, the parents of a minor victim are entitled to invoke the rights and protections accorded crime victims on behalf of their child or on their own behalf, whether the minor victim has survived or is deceased. *See Lincoln v. Holt,* 215 Ariz. 21, 24, ¶ 6, 156 P.3d 438, 441 (App.2007); *see also* A.R.S. § 13–4433(H). Therefore, C.C.'s parents were not required to prove that C.C. died as a result of criminal conduct by defendant before they could invoke victim status and decline a defense interview.[1]

## CONCLUSION

¶ 22 C.C.'s parents are entitled to invoke the constitutional and statutory rights accorded crime victims. Hence, they cannot be compelled to submit to an interview by defendant, and the trial court erred in finding otherwise. Accordingly, we accept jurisdic-

tion and grant relief by vacating the contrary order of the trial court.

CONCURRING: JON W. THOMPSON and LAWRENCE F. WINTHROP, Judges.

---

1. Although C.C.'s parents will not be entitled to restitution from defendant for any economic loss related to C.C.'s death absent a showing that defendant's criminal conduct in leaving the scene aggravated his injuries, *see State ex rel. McDougall v. Superior Court,* 186 Ariz. 218, 220, 920 P.2d 784, 786 (App.1996) (citing *State v. Skiles,* 146 Ariz. 153, 704 P.2d 283 (App.1985)), the causation requirements that must be met before a restitution order can be entered are irrelevant to a person's status as a crime victim.