257 P.3d 1194

**STATE of Arizona, Appellee,**

v.

**Ed Zavala TRUJILLO, Appellant.**

**No. 1 CA–CR 09–0186.**

Court of Appeals of Arizona, Division 1, Department B.

June 14, 2011.

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani, Chief Counsel Criminal Appeals/Capital Litigation Section and Sherri Tolar Rollison, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Karen M. Noble, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BROWN, Judge.

¶ 1 Ed Zavala Trujillo appeals from his convictions and resulting sentences for three counts of aggravated assault. He challenges only the sentences imposed, arguing that the

court (1) improperly considered his lack of remorse and failure to take responsibility; (2) abused its discretion by allowing the State to rely on an undisclosed document to prove his prior convictions; and (3) impermissibly sentenced him as a repetitive and dangerous offender on one of the counts. Because we conclude that the court fundamentally erred at sentencing by considering Trujillo's lack of remorse and unwillingness to admit guilt, we remand for resentencing.

## BACKGROUND

¶ 2 Trujillo was indicted on three domestic violence offenses: aggravated assault, a class 3 felony ("Count 1"); aggravated assault causing fracture of a body part, a class 4 felony ("Count 2"); and aggravated assault involving use of a dangerous weapon, a class 3 dangerous felony ("Count 3"). At trial, the victim testified that because Trujillo, her boyfriend, was angry with her, he choked her and threatened her with a large "machete" knife in the driveway of his parents' home in March 2008. As a result of the attack, the victim had surgery to repair her jaw, a permanent plate inserted in her chin, and testing to determine the existence of any neurological damage.

¶ 3 Trujillo told police officers that he did not know the victim and that he was with L., his child's mother, at the time of the incident so he could not have been with the victim. Trujillo did not testify at trial, but L. testified that he was with her at that time.

¶ 4 A jury convicted Trujillo on all three counts, finding that Count 3 was a dangerous offense involving a deadly weapon and that the State had sufficiently proven the aggravating factor of emotional harm to the victim. Following an evidentiary hearing, the trial court found that Trujillo had two non-dangerous prior felony convictions.

¶ 5 At sentencing, the prosecutor recommended sentences of 15 years on Count 1, a minimum of 12 years on Count 2, and 15 years on Count 3. Defense counsel asked the court to consider several mitigating factors and recommended presumptive terms for each count. Trujillo then read a letter outlining various challenges he had encountered throughout his life.

¶ 6 The trial court, stating that it had considered the recommendations and statements from all parties, commented as follows:

Quite [f]rankly, sir, this is a tragedy all the way around. Not everyone that is raised in south Phoenix ends up where you are right now. Do you understand that?

. . .

You are . . . still in complete denial that you did anything wrong in this case. The presentence report says that you have flat out told the presentence report writer, you didn't think you did anything wrong. In fact, you thought you were being set up by the victim. Okay. The evidence showed otherwise. I listened to the evidence, I listened to the entire trial. The evidence showed otherwise and the jury disagreed with it, they found you guilty of those offenses.

And they found you guilty beyond a reasonable doubt that you beat this victim, she ended up with a brain hemorrhage . . . and some very serious physical injuries because you got mad. And you decided to beat her instead of walking away from it and this occurred less than a year or about a year after you have . . . been out of prison. You have been in prison for four years roughly before that. In your juvenile history, sir, you have a theft, you have a misconduct involving weapons and assault, violent acts as a juvenile. And you also have a history of possessing the [sic] guns.

You went to prison for armed robbery. Okay. That didn't seem to have any impact on you whatsoever. You get out of prison and a year later you are found guilty of beating somebody, putting them in the hospital with horrible injuries.

. . .

And your father is ill, he had surgery, and what do you do, go out after getting into prison, you get out, you go out and get yourself in more trouble.

And then, you proceed to have no remorse for it whatsoever. I have not heard one

remorseful thing from you ,out of this whatsoever. No remorse. Now, I know everybody has their own perspective of those things, but I listened to the facts, I listened to the evidence.

¶ 7 Following those remarks, the court explained its findings with respect to aggravating and mitigating factors. In addition to the emotional harm to the victim found by the jury, the court found that Trujillo's criminal history and the fact that he had re-offended shortly after being released from prison were aggravating factors. As a mitigating factor, the court referenced the environment in which Trujillo grew up, with its limited opportunities.

¶ 8 The trial court then sentenced Trujillo to aggravated concurrent terms of 17 years for Count 1, 10.5 years for Count 2, and 20 years for Count 3. Trujillo timely appealed.

## DISCUSSION

### I. Improper Consideration of Trujillo's Silence

■ ¶ 9 Trujillo argues that the trial court improperly considered his lack of remorse and failure to admit responsibility, using them as the "pivotal" factors in the aggravation of his sentences. He contends further that the court's consideration of his lack of remorse and failure to "own up" to the crimes violated his Fifth Amendment right against self-incrimination. Because Trujillo did not raise this issue before the trial court, however, we review for fundamental error only. *State v. Henderson,* 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).[1] Fundamental error occurs only "in those rare cases that involve error going to the foundation of the case, error that takes away from the defendant a right that is essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id.* (internal quotations and citations omitted). The defendant has the burden to show that fundamental error

**1.** A different panel of this court recently declined to apply fundamental error review for an alleged sentencing error, reasoning that a defendant's failure to object to a matter that occurs during the oral pronouncement of the sentence does not limit the scope of appellate review. *State v.*

occurred and such error caused prejudice. *Id.* at ¶ 20.

### A. Fundamental Error

■ ¶ 10 Trujillo relies on two prior decisions from this court in support of his position that the trial court improperly sentenced him to aggravated terms based on his failure to admit responsibility and lack of remorse. *See State v. Tinajero,* 188 Ariz. 350, 935 P.2d 928 (App.1997), *disapproved on other grounds by State v. Powers,* 200 Ariz. 363, 26 P.3d 1134 (2001); *State v. Hardwick,* 183 Ariz. 649, 905 P.2d 1384 (App.1995).

¶ 11 In *Hardwick,* the defendant was convicted of sixteen out of eighteen counts of attempted child molestation, child molestation, sexual conduct with a minor, indecency, and sexual abuse. 183 Ariz. at 651, 905 P.2d at 1386. The trial court sentenced the defendant to sixteen consecutive prison sentences, two of which were aggravated, for a total of 224 years of imprisonment. *Id.*

■ ¶ 12 Although we reversed the convictions, we also addressed a sentencing error. *Id.* at 656, 905 P.2d at 1391. The trial court's comments revealed two reasons for aggravating the sentences: lack of contrition and harm to the victim. *Id.* We explained that the defendant's lack of contrition "was tantamount to a refusal to admit guilt" and that it would be "irrational or disingenuous" to expect one who maintains his innocence to express contrition or remorse. *Id.* Thus, we concluded that a "convicted defendant's decision not to publicly admit guilt is irrelevant to a sentencing determination, and the trial court's use of this decision to aggravate a [d]efendant's sentence offends the Fifth Amendment privilege against self-incrimination." *Id.* (citing *State v. Carriger,* 143 Ariz. 142, 162, 692 P.2d 991, 1011 (1984) ("A defendant is guilty when convicted and if he chooses not to publicly admit his guilt, that is irrelevant to a sentencing determination."), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2347, 85

*Vermuele,* 226 Ariz. 399, 403, ¶ 14, 249 P.3d 1099, 1103 (App.2011). We need not address, however, whether such reasoning would apply here, as Trujillo concedes that our review on this issue is for fundamental error only.

L.Ed.2d 864 (1985)). Because the record did not reflect that the trial court would have imposed the maximum aggravated sentence without considering lack of contrition, we stated that resentencing would have been necessary had we not reversed the convictions on other grounds. *Hardwick,* 183 Ariz. at 657, 905 P.2d at 1392.

¶ 13 In *Tinajero,* the defendant was convicted of six felony offenses arising from a fatal traffic accident. 188 Ariz. at 352, 935 P.2d at 930. On appeal, the parties agreed that the trial court improperly considered the defendant's lack of remorse at sentencing. *Id.* at 357, 935 P.2d at 935. Because the sentencing record did not " 'clearly show that the trial court would have reached the same result even without consideration of the improper factor[,]' " we remanded for resentencing with an instruction that the court ignore any lack of remorse. *Id.* (quoting *Hardwick,* 183 Ariz. at 656, 905 P.2d at 1391).

¶ 14 In its answering brief in this appeal, the State does not address *Tinajero* or *Hardwick,* nor does it present any authority contradicting the principle that those cases apply—in sentencing a defendant, a court may not consider his or her lack of remorse or failure to admit guilt. Instead, the State argues in passing that the "court's brief mention" of Trujillo's lack of remorse is "belied by the record." The State's assertion is without merit, as it fails to acknowledge that the trial court repeatedly admonished Trujillo for his lack of remorse. Moreover, the State fails to address the trial court's references to Trujillo's failure to admit responsibility for his crimes.

¶ 15 Based on the guidance provided by *Tinajero* and *Hardwick,* we conclude that in considering Trujillo's lack of remorse and his failure to admit guilt, the trial court deprived him of a right essential to his defense. *Cf. Mitchell v. United States,* 526 U.S. 314, 328–30, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) (recognizing that, in a criminal case, the Fifth Amendment affords the same protection in the sentencing phase as in the trial phase, but not reaching the question of

whether a sentencing court may view silence as a lack of remorse and increase a sentence accordingly); [2] *Wohlstrom v. Buchanan,* 180 Ariz. 389, 391, 884 P.2d 687, 689 (1994) (citing *Spevack v. Klein,* 385 U.S. 511, 514, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (stating that the Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence") (internal quotations and citation omitted)); *State v. Lask,* 135 Ariz. 612, 615, 663 P.2d 604, 607 (App.1983) (noting that while some other courts had found no Fifth Amendment violation in a trial court's consideration of a convicted defendant's failure to confess to a crime at sentencing, error did exist in considering silence in a probation proceeding). Accordingly, the court's error was fundamental. *See Henderson,* 210 Ariz. at 568, ¶ 25, 115 P.3d at 608 (recognizing it would be "difficult to conceive" that use of a sentencing procedure that denied constitutional rights could be anything other than fundamental error and finding that the procedure went to the foundation of the defendant's case).

### B. Prejudice

¶ 16 In addition to showing fundamental error, Trujillo "must demonstrate that the error caused him prejudice." *See id.* at ¶ 26. Determining whether prejudice exists "involves a fact-intensive inquiry, and the showing required to establish prejudice therefore differs from case to case." *Id.* Trujillo bears the burden of showing that if the trial court had not improperly considered his lack of remorse and failure to admit responsibility, the court could have reasonably imposed a lighter sentence. *See id.*

¶ 17 Relying on *State v. Munninger,* the State argues that Trujillo cannot demonstrate prejudice merely by speculating that he would have received a lesser sentence absent the error. 213 Ariz. 393, 397–98, ¶¶ 14–15, 142 P.3d 701, 705–06 (App.2006). We agree that mere speculation is insuffi-

**2.** For a discussion of Mitchell and various approaches to its application, see generally Elizabeth Lahey, Note, *State v. Burgess: A Limitation on a Defendant's Right to Remain Innocent,* 8 Pierce L. Rev. 239 (2010).

cient; however, contrary to the situation in *Munninger*, such is not the case here.[3]

¶ 18 The range of sentences the trial court could have imposed on Trujillo, as a repetitive offender with two historical priors, is as follows: Counts 1 and 3, a mitigated term of 7.5 years, a minimum of 10, a presumptive of 11.25, a maximum of 20, or an aggravated maximum[4] of 25. With respect to Count 2, he could have received a mitigated term of 6 years, a minimum of 8, a presumptive of 10, a maximum of 12, or an aggravated maximum of 15 years. A.R.S. § 13–703(G), (J) (Supp. 2010).[5] Trujillo was sentenced to aggravated terms of 17 and 20 years on Counts 1 and 3, respectively, and an aggravated term of 10.5 years on Count 2.

¶ 19 The State argues that "it is clear" the trial court would have imposed aggravated sentences without considering Trujillo's "lack of remorse" because the sentences fell within statutory limits. To the contrary, when fundamental error occurs, determining prejudice involves more than simply ascertaining whether a particular sentence fits within the statutory framework. Instead, as *Henderson* teaches, we look to the specific posture of the case to evaluate the prejudicial impact of a fundamental error. 210 Ariz. at 568, ¶ 25, 115 P.3d at 608.

¶ 20 The trial court's references to Trujillo's failure to admit responsibility and lack of remorse were not mere passing comments. Rather, the court made it quite obvious it was very concerned about those matters, stating no less than five times that Trujillo had either denied responsibility for the crimes or that he had shown no remorse for his conduct. The court specifically referenced the presentence report, noting that Trujillo had proclaimed his innocence to the writer of the report. Moreover, as to Counts 1 and 3, the court imposed significantly

harsher sentences than those recommended by the State. Although a trial court's discretion is not constrained in any way by a party's sentencing recommendation, in this case it is a factor we may consider in evaluating whether the trial court could have reasonably imposed a lighter sentence if there had been no fundamental error.

¶ 21 Under these circumstances, we conclude that Trujillo has met his burden of establishing prejudice. In our view, the record plainly indicates that the trial court's sentencing decision was influenced by Trujillo's failure to admit guilt and his lack of remorse; therefore, a reasonable likelihood exists that a sentencing judge, without consideration of those factors, could have imposed sentences more favorable to Trujillo. *See id.* at 570, ¶ 32, 115 P.3d at 610; *cf. State v. Ramsey*, 211 Ariz. 529, 543 n. 7, ¶ 45, 124 P.3d 756, 770 n. 7 (App.2005) (affirming presumptive sentence, even when trial court referenced lack of remorse as an aggravating factor, based on the "number of additional aggravating factors the trial court cited" and because " 'the record clearly shows the trial court would have reached the same result even without consideration of the [arguably] improper factor[ ].' " (quoting *State v. Ojeda*, 159 Ariz. 560, 562, 769 P.2d 1006, 1008 (1989))). Thus, we remand for resentencing.[6]

## II. Disclosure of Prior Convictions

¶ 22 As part of a hearing on prior convictions, the State called an expert witness to testify concerning Trujillo's fingerprints. The expert testified that fingerprints from the sentencing minute entries purporting to be Trujillo's were insufficient for comparison. However, the expert also testified that fingerprints from Exhibit 3, the pen

---

3. In *Munninger*, we determined that the trial court's consideration of an improper sentencing factor was *not* fundamental error, and regardless, no prejudice had been shown. *Id.* at 397, ¶¶ 12, 14, 142 P.3d at 705.

4. When two or more aggravating factors are present, the court may increase the term of a defendant's incarceration by approximately twenty-five percent. Ariz.Rev.Stat. ("A.R.S.") § 13–702(B), (D) (2010).

5. Absent material revisions after the date of an alleged offense, we cite the statute's current version.

6. In our discretion, we address two other issues raised by Trujillo because those matters are likely to recur on remand.

pack,[7] were a positive match to a control set of Trujillo's fingerprints. On cross-examination, defense counsel asked the expert whether Trujillo's name appeared on the same page of the pen pack as the fingerprints. Because the pen pack pages were stapled, the expert could not immediately see the name in the upper left-hand corner but he was also instructed not to remove the staples in order to be able to do so.

¶ 23 Defense counsel argued that although Trujillo's name could be read on the original document by manipulating the staples, the copy she received in disclosure from the State did not match the certified copy.[8] It appeared that the top portion of the page had been omitted when the document was photocopied for use by counsel, perhaps because office staff was not able to remove the staple of the certified document to make the copy. The State maintained that Trujillo could have inspected the original document upon request. The court agreed, determining that the State had disclosed the existence of the original.

¶ 24 The State moved to admit the minute entries and the pen pack in evidence. In addition to the copying discrepancy involving the pen pack, defense counsel also objected to the admission of the minute entries based on the expert's concession that positive identification could not be made using the fingerprints contained in the minute entries.

■ ¶ 25 Trujillo argues that the copy of the pen pack received by defense counsel did not completely disclose the document because Trujillo's name could not be seen at the top of the fingerprint page and therefore it should have been excluded as a sanction for a discovery violation. Deciding whether a disclosure violation has occurred and the propriety of sanctions are within the sound discretion of the trial court. *Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9, 227 P.3d 481, 484 (App. 2010); *State v. Dumaine*, 162 Ariz. 392, 406,

783 P.2d 1184, 1198 (1989), *disapproved of on other grounds by State v. King*, 225 Ariz. 87, 235 P.3d 240 (2010). We review for an abuse of discretion and "grant considerable deference to the trial court's perspective and judgment." *State v. Meza*, 203 Ariz. 50, 55, ¶ 19, 50 P.3d 407, 412 (App.2002).

¶ 26 Pretrial disclosure obligations of the State are governed by Arizona Rule of Criminal Procedure 15.1. The rule requires the prosecution to disclose a list of documents and prior felony convictions to be used at trial. Ariz. R.Crim. P. 15.1(b), (d).

¶ 27 Trujillo argues that he was "blindsided," "surprised[,] and substantially prejudiced." The record, however, shows that the trial court ordered the State to disclose Trujillo's priors within two weeks of the comprehensive pretrial conference held on June 23, 2008, and Trujillo does not contend that the disclosure was untimely or nonexistent.

¶ 28 Additionally, we reject Trujillo's unsupported proposition that every page of the pen pack must independently identify the defendant. First, it is reasonable to conclude that the pen pack was stapled on both top corners precisely to avoid any lost, additional, or confused pages, and that each page is not intended to be considered separately. Second, even if we focus only on the fingerprint page, Trujillo's social security number is located at the top left-hand corner, thus connecting the document to Trujillo. Finally, resolving any ambiguity about the information or fingerprints in the pen pack was as simple as asking the State to produce a new page, or to view and inspect the original.

■ ¶ 29 Based on our conclusion that the trial court did not abuse its discretion in admitting the pen pack, we need not address Trujillo's contention that the minute entries were inadmissible. As is the case here, a pen pack by itself may be sufficient to establish prior convictions. *State v. Robles*, 213

---

7. "Pen pack" refers to records kept in compliance with state law. A.R.S. § 31–221 (2002) ("The state department of corrections shall maintain a master record file on each person who is committed to the department[.]"); *see State v. Thompson*, 166 Ariz. 526, 527, 803 P.2d 937, 938 (App.1990) (describing some of the contents of the automated summary report "pen pack").

8. Trujillo did not include a copy of the pen pack as received by his counsel in the trial court for comparison with the admitted exhibit. We therefore rely on the discussion in the hearing transcript and the placement of the staples in the original certified copy included in the record.

Ariz. 268, 273, ¶ 17, 141 P.3d 748, 753 (App. 2006) (certified ADOC records showing prior convictions accompanied by testimony that linked the records to the defendant constituted sufficient proof); *State v. Black*, 16 Ariz. App. 587, 588, 494 P.2d 1332, 1334 (1972) (certified copy of fingerprint card in state prison records sufficient to show prior convictions).

## III. Dangerous and Repetitive—Count 3

■■■ ¶ 30 In Count 3, the jury found Trujillo guilty of a class three aggravated assault and also determined the offense was dangerous. The court then found that Trujillo had two nondangerous prior convictions. Trujillo could have been sentenced, as a first-time dangerous offender in a class three felony, to a presumptive term of 7.5 years or a maximum of 15 years. A.R.S. § 13–704(A) (2010). Or, as a repeat offender with two historical priors, Trujillo's presumptive term was 11.25 years with an aggravated maximum of 25 years. A.R.S. § 13–703(C), (J); A.R.S. § 13–105(22) (2010) (defining historical prior felony convictions). Count 3 was designated a dangerous offense on the minute entry, even though Trujillo was not sentenced under the dangerous offender statute.

¶ 31 Trujillo acknowledges that he could have been sentenced under either the repetitive or dangerous sentencing structures, but he contends the court erred by sentencing him as a repeat offender and at the same time designating his conviction as dangerous. We disagree.

■■■ ¶ 32 Trujillo did not raise these objections in the trial court; therefore, we review the court's sentencing order for fundamental error only. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. Based on prior decisions of this court and our supreme court, we find no error. Enhancing a sentence with prior convictions is permissible unless there is express exclusionary language in the sentencing scheme. *State v. Laughter*, 128 Ariz. 264, 268–69, 625 P.2d 327, 331–32 (App.1980) (holding that defendant with prior non-dangerous convictions was subject to sentencing as a repeat offender or for a first dangerous offense); *State v. Smith*, 171 Ariz. 54, 56, 828 P.2d 778, 780 (App.1992) (rejecting argument that sentencing for a dangerous offense conviction under § 13–604(D) is improper when the prior convictions are non-dangerous offenses); *see State v. Diaz*, 224 Ariz. 322, 323–25, ¶¶ 6, 16–17, 230 P.3d 705, 706–08 (2010) (holding that the defendant could be sentenced under the repetitive offender statute rather than the first-time drug offender statute even though the latest offense was the first drug offense).

¶ 33 In *Laughter*, our supreme court rejected the defendant's argument that the two sentencing schemes were in conflict. 128 Ariz. at 269, 625 P.2d at 332. The defendant in *Laughter* was convicted of armed robbery, a dangerous offense, and had prior non-dangerous convictions. *Id.* at 268, 625 P.2d at 331. The court reasoned that there was nothing in the dangerous offense statute that would prohibit the defendant from being sentenced as a repetitive offender and to hold otherwise would be contrary to the legislature's intent. *Id.* at 269, 625 P.2d at 332. What was not specifically addressed by the *Laughter* court, however, was whether the offense was still designated as "dangerous" even when the defendant was sentenced as a repetitive offender. Therefore, Trujillo argues that the State must choose whether to punish him as a dangerous offender or to punish him as a repetitive offender without designating his offense as "dangerous." We disagree.

¶ 34 Trujillo argues that the sentence as it now stands mischaracterizes his sentence and criminal history and thus prejudices him at the department of corrections and upon his eventual release. He gives no further explanation and cites no authority in support of this contention. Further, Trujillo has not directed us to any authority, and we are aware of none, in support of the proposition that the "dangerous" finding must be removed when a trial court elects to sentence under the repetitive sentencing scheme rather than the first-time dangerous scheme. Indeed, the sentencing statutes indicate otherwise. "The *penalties* prescribed by this [repetitive offender] section shall be substituted for the penalties otherwise authorized by law if an allegation of prior conviction is charged in the indictment or information and

admitted or found by the court[.]" A.R.S. § 13–703(N) (emphasis added). By statute, the penalty for the offense can be enhanced, but that does not change the underlying offense.

¶ 35 In *State v. Knorr*, the trial judge noted specifically that he did not believe he needed to dismiss the allegation of dangerousness when sentencing a first-time dangerous offender under the repetitive statute. 186 Ariz. 300, 306, 921 P.2d 703, 709 (App. 1996). On appeal, this court agreed, concluding that "defendant's sentence could properly be enhanced as a nondangerous repetitive offender under A.R.S. § 13–604(D) despite the jury's finding of the dangerous nature of the offense." *Id.*

¶ 36 Even if we were aware of any authority permitting us to nullify a jury's finding of the dangerous nature of an offense, doing so could have unintended consequences contrary to legislative intent. If Trujillo were to re-offend after his release, a court's removal of the dangerous classification may bar the prosecution from seeking to enhance the sentence associated with future prosecution with the current offense, even though the jury found it was dangerous here. Trujillo would then avoid sentence enhancement under the dangerousness scheme despite his use of a deadly weapon to cause serious injuries to the victim in this case. Thus, removing the dangerous classification would potentially allow Trujillo to receive less severe punishment than if he attacked the victim without a weapon, which is absurd. *See Laughter*, 128 Ariz. at 269, 625 P.2d at 332 ("[Defendant's] argument is that by using a deadly weapon he assured a lesser sentence than had he not used a deadly weapon. We will not presume that the legislature intended this absurd result.").

¶ 37 In sum, the law allows a trial court to select between the dangerous and repetitive sentencing options, but does not require that if the court chooses to sentence a defendant as a repeat offender, it must void the jury's finding of dangerousness. *See id.* at 268–69, 625 P.2d at 331–32. Therefore, we conclude that the trial court did not err in sentencing Trujillo as to Count 3.

## CONCLUSION

¶ 38 For the foregoing reasons, we affirm Trujillo's convictions, but remand for resentencing.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and JOHN C. GEMMILL, Judge.