NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHARLES DALLES TORRANCE, *Appellant.*

No. 1 CA-CR 19-0167
FILED 6-11-2020

Appeal from the Superior Court in Maricopa County
No. CR2016-000559-002
The Honorable George H. Foster, Jr., Judge (Retired)

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

**¶1**        Charles Dalles Torrance appeals his conviction and sentence for attempted second-degree murder.  For reasons that follow, we affirm Torrance's conviction but vacate his sentence and remand for resentencing.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        On July 18, 2016, Torrance shot K.D. several times at close range in a parking lot.  Surveillance video recorded the incident, capturing a clear picture of Torrance's face.  After police arrested Torrance, he identified himself in the video and said he knew K.D., but he denied shooting her.

**¶3**        After a six-day trial, the jury convicted Torrance of attempted second-degree murder as charged.  The trial court sentenced Torrance to the maximum aggravated term of 21 years' imprisonment.  We have jurisdiction over Torrance's appeal pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## ANALYSIS

### I.        *Alleged Constitutional Speedy Trial Violation*

**¶4**        Torrance first argues the trial court violated his constitutional right to a speedy trial by granting his defense counsel's repeated motions to continue trial over his personal objections.  We review constitutional issues *de novo*.  *State v. Davolt*, 207 Ariz. 191, 202, ¶ 21 (2004).

**¶5**        A defendant has a constitutional right to a speedy trial.  U.S. Const. amend. VI; Ariz. Const. art. 2, § 24.  We consider four factors to

---

[1]        We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Torrance.  *See State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

determine whether a constitutional speedy trial violation occurred: (1) length of delay; (2) reason for the delay; (3) whether the defendant demanded a speedy trial; and (4) whether the defendant suffered prejudice from the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see State v. Burkett*, 179 Ariz. 109, 114 (App. 1993) (holding that the *Barker* factors apply equally to a speedy trial claim under the Arizona Constitution). "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. As post-accusation delay "approaches one year," the delay becomes "presumptively prejudicial" and requires further analysis of the four *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *see also State v. Medina*, 190 Ariz. 418, 420-21 (App. 1997) (stating that a defendant's right to a speedy trial attaches when the accused is charged by indictment or held to answer following a complaint). Length of delay is the least important factor to consider, and prejudice to the defendant is the most significant. *State v. Spreitz*, 190 Ariz. 129, 139-40 (1997). Constitutional speedy trial protections apply only to delay the State causes, not delay that "is attributable to the defendant." *Barker*, 407 U.S. at 529; *see Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009).

¶6          The grand jury indicted Torrance on August 18, 2016. Trial was later scheduled for December 15, 2016. Torrance's counsel moved to continue the trial because he was "in trial through 1/18/17" with another trial to follow. The trial court granted the motion over Torrance's personal objection. After that, Torrance's counsel moved to continue trial several more times, citing scheduling conflicts with trials in older cases, the need for a ballistics expert to prepare a report, and the need to interview a potentially exculpatory witness. Torrance personally objected to his counsel's motions, all of which the court granted. Trial ultimately began on July 6, 2017.

¶7          Under the first *Barker* factor, the eleven-month delay between indictment and trial here is sufficient to trigger full analysis of the *Barker* factors. *Doggett*, 505 U.S. at 652 n.1; *State v. Miller*, 234 Ariz. 31, 36-37, ¶ 8 (2013); *see State v. Soto*, 117 Ariz. 345, 348 (1977) (finding a nine-month delay sufficient to conduct the full *Barker* analysis). The second *Barker* factor requires us to examine the reasons for the delay. Torrance concedes his counsel's requests for continuances caused the delay, and he does not argue, nor does the record support, that the State was responsible for any continuance. He contends this factor should not count against him, however, because he personally objected. But as a represented party, Torrance was bound by his counsel's requests. *State v. Zuck*, 134 Ariz. 509, 515 (1982) (holding delays sought by defense counsel bind the defendant

and constitute a waiver of the speedy trial right even without the defendant's consent).

¶8            Torrance cites *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), to argue that the delay from his counsel's actions should not be attributed to him.  In *McCoy*, the trial court permitted defense counsel, in an effort to avoid the death penalty, to admit the defendant's guilt to a jury despite the defendant's strenuous objections.  *Id.* at 1506-07.  The Supreme Court held conceding guilt for a defendant who maintained his innocence violated the Sixth Amendment and constituted structural error.  *Id.* at 1511.  The Court stated that under the Sixth Amendment, "it is the defendant's prerogative, not counsel's, to decide on the objective of his defense."  *Id.* at 1505.  The Court further held issues of "trial management [are] the lawyer's province," although other more significant decisions are reserved for the defendant: "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal."  *Id.* at 1508.  Here, continuances for defense counsel to prepare for trial and pursue beneficial evidence are plainly "trial management" matters and "strategic choices about how best to achieve [Torrance's] objectives" within a "lawyer's province."  *Id.* (emphasis omitted).  Consequently, we attribute the delay to Torrance and weigh this factor against him.

¶9            Examining the third *Barker* factor, defense counsel's motions to continue waived Torrance's right despite his personal demand for a speedy trial.  *See Zuck*, 134 Ariz. at 515.  And the reasons defense counsel requested more time—to prepare for trial effectively and to strengthen Torrance's defense—reinforce this conclusion.  *See State v. Henry*, 176 Ariz. 569, 579 (1993) (finding no constitutional violation when the defendant's "vigorous defense" caused delays "of his own making" despite his personal opposition to continuances).  We weigh this factor against Torrance.

¶10           The fourth and most important *Barker* factor is whether the eleven-month delay prejudiced Torrance.  *See Spreitz*, 190 Ariz. at 139-40.  "We assess prejudice in light of the interests that the speedy trial right protects against: (1) 'oppressive pretrial incarceration,' (2) 'anxiety and concern of the accused,' and (3) 'the possibility that the defense will be impaired' by diminishing memories and loss of exculpatory evidence."  *State v. Parker*, 231 Ariz. 391, 399, ¶ 16 (2013) (quoting *Barker*, 407 U.S. at 532).  Delay that impairs the defense is the most serious type of prejudice under this factor.  *Id.*

¶11           Torrance contends he suffered prejudice from his incarceration and anxiety while awaiting trial, but neither was unduly

prejudicial under the circumstances here. *See Spreitz*, 190 Ariz. at 140 (finding five years' incarceration did not violate defendant's speedy trial rights when it "may have increased defendant's anxiety . . . [but] the delay did not prejudice his ability to defend"); *see also Henry*, 176 Ariz. at 579 ("That these [trial] delays were largely of his own making overrides the fact that he was incarcerated and assertedly felt increasing anxiety as trial drew near."). Moreover, Torrance does not explain how his general anxiety was more prejudicial than the anxiety that is "inevitably present in every case to some extent." *Barker*, 407 U.S. at 537 (White, J., concurring).

¶12 Most significantly, Torrance does not assert, and the record does not show, his ability to defend against the charges was adversely impacted in any meaningful way. To the contrary, the delay was intended to and likely did benefit Torrance's defense, not harm it. *See Henry*, 176 Ariz. at 579. The fourth *Barker* factor, thus, also weighs against Torrance. In sum, after balancing the four *Barker* factors, we find no constitutional speedy trial violation.

## II. *Improper Consideration of Torrance's Lack of Remorse*

¶13 Torrance next argues the trial court erred by considering his lack of remorse as an aggravating factor at sentencing. Generally, "[w]e will not disturb a sentence that is within the statutory range absent an abuse of the trial court's discretion." *State v. Joyner*, 215 Ariz. 134, 137, ¶ 5 (App. 2007). We review arguments raised for the first time on appeal for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). Torrance contends we should review his claim for abuse of discretion despite his failure to raise the issue to the trial court, citing *State v. Vermuele*. *See* 226 Ariz. 399, 401-03, ¶¶ 6-12 (App. 2011) (concluding a defendant does not forfeit ordinary appellate review by failing to object during or after the imposition of sentence). On the other hand, the State argues we should review for fundamental error because Torrance failed to object, asserting *Vermuele* was incorrectly decided.

¶14 We need not decide the parties' legal dispute concerning standard of review on this record because *Vermuele* is distinguishable from the facts here. The presentence report specifically listed Torrance's "refusal to take responsibility for his actions" as an aggravating factor, and the State's sentencing memorandum also asserted that Torrance had not "taken responsibility for the crime or shown any remorse." Therefore, unlike the situation in *Vermuele*, Torrance had sufficient opportunity to raise this issue to the trial court before sentencing. *See id.*

¶15 In addition, following its pronouncement of sentence, the trial court asked if either party had any issues about the case to discuss, and neither party did. Without raising a challenge to the sentence, however, Torrance's counsel proceeded to address scheduling matters with the court regarding Torrance's "open case." Thus, the record further shows that Torrance had the opportunity to object after sentencing. Consequently, we review for fundamental, prejudicial error. *See State v. Trujillo*, 227 Ariz. 314, 317, ¶ 9 (App. 2011) (reviewing the trial court's consideration of lack of remorse at sentencing for fundamental error when the defendant did not raise the issue below).

¶16 "On fundamental error review, the defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby." *State v. Meeds*, 244 Ariz. 454, 460-61, ¶ 13 (App. 2018). The sentencing court commits fundamental error if it imposes an aggravated sentence based in part on a prohibited aggravating factor. *Trujillo*, 227 Ariz. at 318, ¶ 15. An appellant establishes prejudice by showing the sentencing court reasonably might have imposed a lighter sentence if it had not improperly considered the prohibited factor. *Id.* at 318-19, ¶¶ 16, 21. In other words, the record indicates the improper factor might have influenced the sentencing decision. *Id.* The appellate court should remand for a new sentencing hearing if "we cannot be certain that [the sentencing court] would have imposed the same sentence absent that factor." *State v. Munninger*, 213 Ariz. 393, 396, ¶ 9 (App. 2006) (internal quotation marks and citation omitted).

¶17 Here, the jury found three aggravating factors: the offense was dangerous; it caused serious physical injury; and it caused physical, emotional, or financial harm to the victim. After an evidentiary hearing, the trial court later found Torrance had three prior felony convictions. At sentencing, Torrance provided letters of family support and medical records showing he had previously been diagnosed with bipolar disorder. Torrance declined to address the court personally.

¶18 The trial court first considered Torrance's proposed mitigation evidence but made no findings for mitigating factors. The court then addressed aggravating factors before pronouncing sentence:

> The Court also sat through the trial in this matter. And that evidence was rather extensive but simple. The crime was captured on videotape, and the videotape showed, Mr. Torrance, that you walked this young lady, this victim into a parking lot, and raised

up a pistol and shot at her multiple times about five-to-ten feet away from you.

*There's no explanation as to why you did this.* The videotape showed the victim, in an attempt to save herself, miraculously walked from the back of that motel where this event took place, fell down at least no less than five times, by my count. And one time fell into what appeared to be face down into a puddle of water and if the gunshots didn't kill her, one would assume that she would have drowned. Miraculously, she still got up, made her way to the lobby, banged on the window. The attendant at the front desk wouldn't even open the door. I guess he didn't know what he was facing. And all told, no person should be put through that. It's a heinous crime and in the Court's opinion. The aggravating factors have been found by the jury.

The victim's inability to speak because she was so traumatized by this event is not unusual. *And with all the matters that have been presented to me, and I ask you if there's anything you wanted to say, and I don't find anywhere in the record where you have any remorse for this action.* The result is very simple, Mr. Torrance. The Court finds, based on everything that's been presented to me, that you are a danger to society. That you committed this crime. There's no question that you did it. You did it without feeling. *You showed no remorse since then.* The victim has suffered tremendous emotional and physical harm. The Court finds the appropriate sentence is to the Department of Corrections for the aggravated term of 21 years.

(Emphasis added.)

**¶19**     A convicted defendant's choice "not to publicly admit [his or her] guilt . . . is irrelevant to a sentencing determination." *State v. Carriger*, 143 Ariz. 142, 162 (1984). "If a defendant admits [his or her] guilt, this can be used as additional mitigating evidence . . . ." *Id.* Similarly, if a defendant offers evidence of remorse, the sentencing court can consider and comment on its perception of the defendant's remorse and whether it should consider the same as a mitigating factor. *See State v. Hardwick*, 183 Ariz. 649, 656 (App. 1995). However, absent the defendant admitting guilt and raising the issue of remorse, the trial court may not consider lack of remorse as an aggravating factor, *Trujillo*, 227 Ariz. at 317-18, ¶¶ 11-15, because "[a]s contrition or remorse necessarily imply guilt, it would be irrational or disingenuous to expect or require one who maintains [his or her] innocence to express contrition or remorse." *Hardwick*, 183 Ariz. at 656.

¶20        Here, Torrance maintained his innocence throughout trial and after his conviction. In the presentence interview, he told a probation officer he "did not commit this offense" but felt sympathy for the victim and hoped the police would "find the person who actually committed the crime." He did not at any point ask the court to consider his remorse or acceptance of responsibility as a mitigating factor. Nonetheless, in identifying aggravating factors on the record, the court admonished Torrance for his lack of remorse and failure to explain why he committed the crime, including a comment voicing its concern with Torrance's choice not to speak at sentencing. *See Trujillo*, 227 Ariz. at 318, ¶¶ 14-15.

¶21        The State argues the trial court properly considered "Torrance's lack of remorse in the context of finding no mitigation," but the court did not mention remorse when it reviewed the proffered mitigation evidence. The court only considered Torrance's lack of remorse and explanation when it discussed the aggravating factors, connecting the factors throughout its commentary. Further, as noted above, the court could not consider lack of remorse as rebuttal evidence because Torrance never claimed he was remorseful. *Cf. State v. Molina*, 211 Ariz. 130, 138, ¶¶ 30-31 (App. 2005) (finding no error in the trial court's consideration of defendant's lack of remorse to counter his claim he was "sorry for the [victim's] injuries" and took responsibility after he told the presentence interviewer he was the victim because he was not guilty); *State v. McDonald*, 156 Ariz. 260, 263 (App. 1987) (finding that a trial court may consider a defendant's false testimony as an aggravator because it is distinct from refusal to admit guilt).

¶22        The State cites *State v. Jones*, 197 Ariz. 290, 314, ¶ 79 (2000), to support its argument that "a trial court may also consider lack of remorse for purposes of determining whether the possibility of rehabilitation" exists. But *Jones* does not stand for the proposition that a trial court may consider lack of remorse for such purpose. Indeed, the issue of a defendant's remorse is never discussed in *Jones* for any purpose, sentencing or otherwise. *See id.* at 309-14, ¶¶ 54-81. We thus conclude the court fundamentally erred.

¶23        Having established fundamental error, Torrance bears an additional burden to prove prejudice. *Escalante*, 245 Ariz. at 142, ¶ 21. Torrance contends the trial court's improper consideration of his lack of remorse resulted in "room for a lesser sentence" than the statutory maximum and a "reasonable sentencer, not considering the improper aggravation, could have imposed a more favorable sentence." Conversely, the State argues the trial court's emphasis on several unchallenged

aggravators "shows it would have reached the same result, even without considering Torrance's lack of remorse" and thus Torrance fails to meet his burden. *See Munninger*, 213 Ariz. at 397, ¶ 12 (explaining that no prejudice results under fundamental error review when "it is clear that an aggravated sentence would have been imposed even if the improper aggravator had not been used"). An aggravated sentence may heighten the possibility of prejudice to the defendant when the trial court weighs improper aggravating factors, particularly if the aggravated sentence range is broad and the court imposes a sentence at or near the maximum term. *Cf. State v. Ramsey*, 211 Ariz. 529, 543, ¶ 45 n.7 (App. 2005) (finding no prejudice in trial court's consideration of improper factors where court imposed the presumptive sentence).

**¶24** Here, the trial court sentenced Torrance to the maximum potential sentence for a first-time dangerous offender convicted of a Class 2 felony. *See* A.R.S. § 13-704(A) (setting the sentencing range from a minimum term of 7 years to a maximum term of 21 years with a presumptive term of 10.5 years). The court's remarks indicate that the harm Torrance caused the victim and the "heinous nature" of the crime were significant factors in its sentencing decision. The court's comments also demonstrate, however, that it heavily weighed Torrance's lack of remorse and explanation against him. Our review of the record indicates these references amounted to more than "mere passing comments." *See Trujillo*, 227 Ariz. at 319, ¶ 20 ("[T]he court made it quite obvious it was very concerned about [the defendant's failure to admit responsibility and lack of remorse] . . . ."). The court here explicitly referenced Torrance's lack of remorse and explanation during its brief recitation of aggravating factors, stressing lack of remorse in its next-to-last comment before it imposed the maximum sentence prescribed. From this context, the record plainly reveals that Torrance's lack of remorse and explanation likely influenced the court's sentencing decision. *Id.* at ¶¶ 19-21. This emphasis on improper aggravating factors, combined with the broad sentencing range, leave us unable to determine the trial court would have imposed the same sentence of 21 years had the court weighed only permissible aggravating factors.

**¶25** We, therefore, determine a reasonable likelihood exists the court might impose a more favorable sentence without considering those improper factors, and Torrance satisfied his burden to establish prejudice. *Id.*; *see also State v. Pena*, 209 Ariz. 503, 509, ¶ 23 (App. 2005) ("The reversal of a single aggravating factor may mean that the 'sentencing calculus . . . has changed.'" (quoting *State v. Lehr*, 205 Ariz. 107, 109, ¶ 8 (2003))). Accordingly, we remand the matter for resentencing in a manner consistent with this decision, emphasizing that nothing precludes the court from

imposing the same sentence after "conscientiously balancing the factors [the court] may properly consider." *See State v. Kerekes*, 138 Ariz. 235, 238 (App. 1983).

## CONCLUSION

**¶26** We affirm Torrance's conviction but vacate his sentence and remand for resentencing.



AMY M. WOOD • Clerk of the Court
FILED: AA