NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANDRES ALEJANDRO NUNEZ, *Appellant.*

No. 1 CA-CR 22-0435

FILED 09-19-2024

Appeal from the Superior Court in Maricopa County
No. CR2020-104251-002
The Honorable Monica S. Garfinkel, Judge *Pro Tempore*

**CONVICTIONS AFFIRMED; REMANDED FOR RESENTENCING**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Andrew M. Jacobs and Chief Judge David B. Gass joined.

---

**B R O W N**, Judge:

**¶1**         This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969).  Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal.  The defendant, Andres Nunez, was given the opportunity to file a supplemental brief but did not do so.

**¶2**         Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Nunez, *State v. Guerra*, 161 Ariz. 289, 293 (1989).  After our initial review of the record, we requested supplemental briefing under *Penson v. Ohio*, 488 U.S. 75 (1988) on whether the trial court committed fundamental error resulting in prejudice by considering Nunez's failure to admit guilt at sentencing.

## BACKGROUND

**¶3**         On the evening of January 27, 2020, Allie was driving northbound on Cherry Road in a rented SUV; Rachel was a passenger.[1] Meanwhile, Nunez was driving a sedan eastbound on Rio Salado Parkway with his brother Arturo and Arturo's girlfriend Maria in the sedan.  When Allie stopped at a stop sign and inched forward to turn right onto Rio Salado, Nunez slowed down and maneuvered around Allie's SUV.

**¶4**         Immediately, Arturo and Maria started yelling profanities and racial slurs at Allie and Rachel.  Rachel proceeded to turn right onto Rio Salado and attempted to pass the sedan multiple times; however, each time she tried Nunez swerved into her lane, forcing her SUV into oncoming traffic.  Eventually, both vehicles came to a stop at the crowded intersection of Rio Salado and Country Club Drive with the SUV a few feet behind the sedan.

---

[1]         We use pseudonyms to protect the victims' privacy.

¶5        Arturo exited the sedan and began banging on the hood of the SUV.  Soon after, all occupants exited the vehicles and continued using profanity and racial slurs.  This quickly escalated into a physical encounter between Rachel and Arturo on the sidewalk.  Arturo chest bumped Rachel, who responded by hitting Arturo in the face; finally, Arturo pushed Rachel to the ground, ending their encounter.  Allie then saw that Nunez had a gun and she decided to leave.  She threw Arturo to the ground and frantically ran away, making it into the driver's seat of the SUV.

¶6        Allie drove in reverse a short distance, then shifted into drive and turned into the entrance of a commercial parking lot, striking Arturo, who had gotten up and was running toward the sedan.  Arturo was knocked to the ground, and Allie kept driving into the parking lot.  A few seconds later, as Allie drove through the parking lot toward Country Club Drive, Nunez fired at least 11 shots at the SUV.  Allie was shot three times but managed to survive.

¶7        The State indicted Nunez for (1) discharge of a firearm at a structure, a class 3 dangerous felony; (2) aggravated assault, a class 3 dangerous felony; and (3) disorderly conduct, a class 6 dangerous felony.

¶8        At trial, the State called 14 witnesses, including Allie, Rachel, and two other eyewitnesses, who all recounted their version of events.  Police officers who responded to the scene testified to finding a gun and 11 shell casings.  A forensics expert testified that Nunez's DNA was found on the gun, and a ballistics expert testified that the shell casings matched the gun and the pattern of bullet holes in the SUV indicated that it was moving away from the shooter as the shots were fired.  Finally, the State played a recorded interview with Nunez from the night of the shooting.

¶9        When the State rested, Nunez moved for judgment of acquittal, which the court denied.  Nunez testified, admitting he fired the gun at the SUV 11 times even though it was not coming towards him, he knew the risks of firing a gun at a moving vehicle, and he was not surprised that Allie was shot.  He agreed that firing multiple gunshots in such a crowded place would put people in fear.  However, Nunez claimed that he fired the shots in defense of himself and his brother, fearing the SUV would turn around and harm them.  He also claimed that he was aiming at the front tire and engine to disable the SUV, but his aim was off because of a recent surgery on one of his fingers.  The jury was given self-defense instructions as Nunez requested.

¶10 After closing arguments and jury deliberations, Nunez was found guilty on all three counts. After an aggravation hearing, the jury found the following four aggravating circumstances were present for each offense: (1) the offense was dangerous; (2) the offense caused physical, emotional, or financial harm to the victim; (3) Nunez had the opportunity to walk away from a confrontation; and (4) Nunez did not seek help for the victim.

¶11 The trial court then ordered a presentence report. At sentencing, the court explained it had reviewed the presentence report, which "calls for concurrent presumptive terms." The court also noted that Nunez had "no prior felony history and just a single misdemeanor conviction from 2019." After hearing from the victims, the prosecutor, a few of Nunez's friends and family members, and Nunez himself, the court stated:

> The jury found several aggravating factors which justifies the Court to impose a greater-than-presumptive sentence. But the Court needs to weigh the aggravating factors that the jury found with the mitigating factors presented to the Court. The Court has given this a lot of thought. No matter what I sentence you to, it's not going to undo what happened. But there does need to be an appropriate punishment for your actions. *Even standing here today, I don't think you recognize that your actions were wrongful or that you should not have done what you did*. The aggravating factors are basically, even though they were found separately from -- by the jury, they are fairly inherent in the charges themselves, although the aggravated assault and all these charges could have been found without the injury. So the serious physical injury that was caused the Court finds to be most significant of the aggravating factors.

> With regard to the mitigating factors, your lack of felony criminal history, your family support, your intention in trying to defend your brother, your stable employment are mitigating factors in this case.

> So based on the totality of the circumstances and the recommendation of the probation department, I do think that the aggravating and mitigating factors *basically balance each other out with a slight lean towards the aggravating factors*.

(Emphasis added.) The court then imposed the following sentences: (1) for discharging a firearm at a structure, a slightly aggravated sentence of 8 years (7.5 years presumptive); (2) for aggravated assault, a slightly aggravated sentence of 8 years (7.5 years presumptive); and (3) for disorderly conduct, the presumptive sentence of 2.25 years. All three sentences were ordered to run concurrently, with 677 days of presentence incarceration credit. Nunez timely appealed, and we have jurisdiction under A.R.S. § 12-120.21(A)(1).

## DISCUSSION

**¶12** After a careful review of the record, we conclude the trial court's consideration in sentencing of Nunez's failure to admit guilt was reversible error, but that there was no other error in this proceeding. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Nunez was present and represented by counsel at all critical stages of the proceedings against him. The evidence presented supports the convictions, and the sentences imposed fall within the range permitted by law. Except for the sentencing error discussed below, as far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Nunez's constitutional and statutory rights.

**¶13** In his supplemental *Penson* brief, Nunez argues the trial court's improper consideration of his failure to admit guilt constitutes fundamental, prejudicial error and thus resentencing is required. The State counters that the court only referenced Nunez's failure to admit guilt "in passing," and it was not considered in the sentencing decision, but even if it was, Nunez has not shown he was prejudiced.

**¶14** Because Nunez did not raise this issue with the trial court, we will not remand for resentencing "unless the court committed error that was both fundamental and prejudicial." *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). "A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial." *Id.* at 142, ¶ 21.

**¶15** As explained by our supreme court, a "defendant is guilty when convicted and if he chooses not to publicly admit his guilt, that is irrelevant to a sentencing determination." *State v. Carriger*, 143 Ariz. 142, 162 (1984). However, "[i]f a defendant admits his guilt, [it] can be used as additional mitigating evidence, provided the defendant is truly remorseful

for his crime." *Id.* A trial court's reliance on a defendant's failure to publicly admit guilt "to aggravate" the sentence imposed "offends the Fifth Amendment privilege against self-incrimination." *State v. Hardwick*, 183 Ariz. 649, 656 (App. 1995).

**¶16** Here, the trial court told Nunez that she did not believe he recognized his "actions were wrongful" or that he "should not have done" what he did. In doing so, the court considered his failure to admit guilt as part of her sentencing determination, which constitutes fundamental error. *See State v. Trujillo*, 227 Ariz. 314, 318, ¶ 15 (App. 2011) ("considering [defendant's] lack of remorse and his failure to admit guilt" at sentencing "deprived him of a right essential to his defense" and thus constituted fundamental error). The State suggests the court's comment was "merely a passing statement," recognizing that Nunez seemed sincere in believing he acted in self-defense. Granted, the trial court's brief reference to Nunez's failure to admit guilt is not like the repeated references in *Trujillo*. *See id.*, at 318, ¶ 14. But Nunez's right not to be penalized for declining to admit guilt does not evaporate simply because the court did not repeatedly discuss it. *See State v. Mendoza*, 248 Ariz. 6, 20–21, ¶ 34 (App. 2019) (recognizing that a court's broad discretion in the sentencing sphere "cannot override the constitutional imperative that a defendant cannot be punished 'because he has done what the law plainly allows him to do'").

**¶17** To establish reversible error, however, Nunez must show that the error resulted in prejudice. *See Escalante*, 245 Ariz. at 142, ¶ 21. Specifically, he must show that a reasonable judge, without considering his failure to admit guilt, "could have" imposed a lighter sentence. *See id.* at 144, ¶ 29 ("[The defendant] must show that without this [error], 'a reasonable jury . . . *could have* reached a different [result].'") (citing *State v. Henderson*, 210 Ariz. 561, 569, ¶ 27 (2005)); *Trujillo*, 227 Ariz. at 318, ¶ 16 (noting that defendant must show that "the court *could have* reasonably imposed a lighter sentence" had it not considered defendant's lack of remorse) (emphasis added).

**¶18** In applying the "could have" inquiry, we must exclude "imaginative guesswork." *Escalante*, 245 Ariz. at 144, ¶ 31. "The standard is an objective one, and requires a showing that without the error, a reasonable [judge] could have plausibly and intelligently [imposed a lighter sentence]." *Id.* "The showing a defendant must make varies, depending upon the type of error that occurred and the facts of a particular case." *Henderson*, 210 Ariz. at 568, ¶ 26. In applying the "could have" standard, we examine the entire sentencing record, including the parties' arguments. *See Escalante*, 245 Ariz. at 144, ¶ 31.

**¶19** The presentence report recommended presumptive sentences, and the court found that the aggravating and mitigating factors "basically balance each other out with a slight lean towards the aggravating factors." Accordingly, Nunez has met his burden of establishing prejudice because, without the improper reference to his failure to admit guilt, a reasonable judge could have plausibly and intelligently imposed a lighter sentence. *See Escalante*, 245 Ariz. at 144, ¶ 34; *Trujillo*, 227 Ariz. at 319, ¶ 21.

## CONCLUSION

**¶20** We affirm Nunez's convictions, but we remand for resentencing. As to the convictions, defense counsel has no further obligations unless counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Nunez has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review based on our affirmance of his convictions for discharge of a firearm at a structure, aggravated assault, and disorderly conduct.



AMY M. WOOD • Clerk of the Court
FILED:   AGFV